[No. D021780. Fourth Dist., Div. One. July 2, 1997.]

JANET KRASLAWSKY, Plaintiff and Appellant, v.
UPPER DECK COMPANY, Defendant and Respondent.

**COUNSEL**

Chandler & Vatave, Linda Hart Chandler and Sunil Lewis Vatave for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, John D. Collins and Angela A. Dahl Sisney for Defendant and Respondent.

OPINION

HALLER, J.—The Upper Deck Company terminated Janet Kraslawsky after Kraslawsky refused to take a urinalysis drug/alcohol test under Upper Deck's reasonable cause drug testing program. Kraslawsky sued Upper Deck, alleging Upper Deck violated her privacy rights under the California Constitution (Cal. Const., art. I, § 1), intentionally inflicted emotional distress, and wrongfully terminated her in violation of public policy. The trial court granted summary judgment in favor of Upper Deck on each of Kraslawsky's claims. Kraslawsky appeals.

Kraslawsky does not challenge the constitutionality of Upper Deck's suspicion-based testing program. Kraslawsky instead contends Upper Deck's demand that she submit to a urinalysis test violated her state constitutional right to privacy because Upper Deck did not have reasonable cause to believe she was intoxicated. Upper Deck counters that (1) the existence of reasonable cause is not relevant to the constitutional privacy analysis, and (2) Kraslawsky did not proffer sufficient evidence to create a triable issue of fact on the reasonable cause issue.

We determine summary judgment was improper on Kraslawsky's state constitutional privacy claim because the existence of reasonable cause was relevant and Kraslawsky submitted evidence creating a triable issue of fact as to whether Upper Deck had reasonable cause to believe she was under the influence of intoxicants. We reverse on Kraslawsky's wrongful termination claim because Upper Deck moved for summary judgment on this claim based solely on its assertion there was no actionable invasion of privacy. We affirm the judgment on Kraslawsky's intentional infliction claim because Upper Deck presented evidence its conduct was not outrageous and Kraslawsky failed to proffer contrary evidence.

FACTUAL AND PROCEDURAL BACKGROUND

Upper Deck manufactures sports trading cards and sports memorabilia. In July 1991, Upper Deck interviewed Kraslawsky for an executive secretary position. Upper Deck notified Kraslawsky it would hire her if she underwent a medical examination and successfully completed a urine test for drugs and alcohol.[1] During the ensuing medical examination, Kraslawsky voluntarily provided a urine sample and disclosed the prescription and nonprescription medications she was taking. The sample tested positive for a prescription medication. Kraslawsky later provided a doctor's note confirming the need for the medication.

---

[1] For convenience, when we refer only to drugs, we intend to include the phrase "drugs and alcohol."

Upper Deck then hired Kraslawsky as an executive secretary for company vice-president and marketing director Anthony Loiacono. The personnel department gave Kraslawsky a copy of the employee handbook, which included a discussion of the company policy against alcohol and drug use in the workplace and the company's reasonable cause drug testing policy. The handbook stated Upper Deck "may require an employee to submit to monitored tests whenever it has reasonable cause to believe that an employee is [under the influence of intoxicants] . . . . An employee's consent . . . to submission to tests is required as a condition of employment. An employee's refusal to consent when requested by [Upper Deck] may result in disciplinary action, including discharge, even for a first offense." Kraslawsky read the handbook, and signed a form stating she agreed to abide by the stated policies.

Eight months later, on March 10, 1992, at approximately 4 p.m., an Upper Deck personnel employee requested that Kraslawsky drive to a medical facility and provide a urine sample for a drug test. Kraslawsky refused to take the test. Based on this refusal, Upper Deck terminated Kraslawsky.

On June 5, 1992, Kraslawsky brought an action against Upper Deck, alleging Upper Deck's demand that she submit to a drug test was made "without good cause or reason, and at random."

In March 1994, Upper Deck moved for summary judgment, relying on *Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 [26 Cal.Rptr.2d 834, 865 P.2d 633]. Upper Deck contended Kraslawsky could not recover on her privacy cause of action because Kraslawsky had no reasonable expectation of privacy, Kraslawsky consented to the "reasonable cause" drug test, and Upper Deck had a legitimate need to drug test its employees.

In support of its motion, Upper Deck proffered evidence showing that (1) Kraslawsky read and signed the employee handbook containing notice of the reasonable cause drug testing policy; (2) two Upper Deck managers personally observed Kraslawsky on March 10, 1992, and believed she was under the influence of intoxicants; (3) had Kraslawsky submitted to the test, her urination would not have been visually observed[2] and the results would have been disclosed only to specified Upper Deck personnel; (4) Kraslawsky did not object to the preemployment urine test and at that time disclosed medications she was taking; and (5) Kraslawsky testified at a deposition that she did not believe the *procedure* involved in taking the test was intrusive.

---

[2]According to the evidence submitted, the test would have been conducted at a medical facility selected by Upper Deck. At the facility, the employee would enter a bathroom fully clothed and the test would be monitored by a nurse standing outside the bathroom door. The employee would not be required to remove clothing before entering the bathroom, unless he or she had a bulky outer garment.

Upper Deck also proffered the declaration of Brian Burr, an Upper Deck executive vice-president of operations. Burr stated Upper Deck maintains a suspicion-based drug testing policy to (1) "further its interest in the efficient operation of its business and performance of its employees"; (2) reduce the risks of liability associated with employee drug or alcohol use; (3) ensure that its policies are "consistent with the drug and alcohol policies" of sporting organizations since "an image of being soft on drugs . . . would hinder its business in promoting competitive sports and sports stars"; (4) reduce the costs of health care premiums; and (5) ensure the health and safety of its employees. Burr stated Upper Deck does "not favor 'random' [drug] testing."

In opposition to the summary judgment motion, Kraslawsky contended she had a reasonable expectation of privacy and Upper Deck's asserted reasons for requiring the drug test were insufficient to overcome her privacy rights. Kraslawsky argued and presented evidence that Upper Deck did not have "reasonable cause" to believe she was under the influence of intoxicants. This evidence included Kraslawsky's declaration in which she denied that on March 10 she was intoxicated or acting as if she were intoxicated or that she exhibited the physical symptoms allegedly observed by the two Upper Deck managers. Kraslawsky also submitted deposition transcripts of the two managers who acknowledged they did not know what was wrong with Kraslawsky, never specifically believed she was under the influence of intoxicants, and had never received formal training on detecting substance abuse. Kraslawsky additionally proffered evidence that her job responsibilities were strictly secretarial and did not involve security or safety-related activities.

The court granted summary judgment in favor of Upper Deck. The court found the undisputed facts established Kraslawsky did not have a reasonable expectation of privacy because she "was on notice of the testing and consented to it" and Upper Deck's "testing procedures are suspicion-based and not random." The court also found the drug testing policy was not a "serious" invasion of Kraslawsky's privacy rights because the urine test was "unobserved" and "the results would be kept confidential." The court further determined Upper Deck's "legitimate and important countervailing interests in its drug testing policy outweigh any privacy interest plaintiff might have had . . . per the Burr Declaration." The court alternatively found Kraslawsky's consent to Upper Deck's reasonable cause drug testing policy was a "complete defense" to Kraslawsky's privacy claim. The court granted summary judgment on the wrongful termination and emotional distress claims because Kraslawsky could not establish an actionable invasion of privacy.

## Discussion

### I. *Right of Privacy Under the State Constitution*

■ Kraslawsky contends the court erred in granting summary judgment on her claim that Upper Deck violated her privacy right under the California Constitution.

### A. *Legal Principles*

Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*." (Italics added.) ■ This provision "creates a right of action against private as well as government entities." (See *Hill* v. *National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th 1, 20 (*Hill*).)

The California Supreme Court has recently addressed the validity of urinalysis drug testing under our state Constitution in two decisions—*Loder* v. *City of Glendale* (1997) 14 Cal.4th 846 [59 Cal.Rptr.2d 696, 927 P.2d 1200] (*Loder*) and *Hill*, *supra*, 7 Cal.4th 1.[3]

■ In *Hill*, the court articulated a test for evaluating whether a plaintiff has stated a cause of action for violation of privacy under the California Constitution. (*Hill*, *supra*, 7 Cal.4th at pp. 39-40.) The court stated a plaintiff has the burden to prove three elements: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Ibid.*) A defendant may prevail by negating any of these three elements or by pleading and proving, as an affirmative defense, the invasion of privacy is justified because it substantively furthers one or more countervailing interests. (*Id.* at p. 40.) The plaintiff in turn may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct that have a lesser impact on privacy interests. (*Ibid.*)

Applying this analysis, *Hill* found the National Collegiate Athletic Association's (NCAA) visually monitored urinalysis testing program interferes with both autonomy privacy interests and informational privacy interests protected by the state Constitution. (*Hill*, *supra*, 7 Cal.4th at pp. 40-41.) The

---

[3] When the trial court granted the summary judgment, the California Supreme Court had filed *Hill*, but had not yet decided *Loder*.

court determined, however, that such interference was not unconstitutional, stressing that college athletes have substantially diminished expectations of privacy and the NCAA has legitimate and important interests in safeguarding the integrity of intercollegiate athletic competition and protecting the health and safety of student athletes. (*Id.* at pp. 41-54.)

*Hill* expressly declined to address the validity of drug testing conducted by an employer. (*Hill, supra,* 7 Cal.4th at p. 54.) Noting that "[e]mployment settings are diverse, complex, and very different from intercollegiate athletic competition," the court stated the "requirements . . . imposed on private employers by the California constitutional right to privacy will depend upon the application of the elements and considerations we have discussed to the employer's special interests and the employee's reasonable expectations prevailing in a particular employment setting." (*Id.* at pp. 54-55.)

Two years later, the California Supreme Court considered a facial challenge to a city employee drug testing program that tested job applicants and existing employees conditionally approved for a promotion. (*Loder, supra,* 14 Cal.4th 846.) The court issued five separate opinions: lead (written by Chief Justice George and joined by Justice Werdegar), and four separate concurring and dissenting opinions (one written by Justice Mosk, one written by Justice Kennard, one written by Justice Chin, joined by Justices Baxter and Brown, and one written by Justice Brown.) Although the justices expressed differing reasons for the conclusions, there was a majority for each of the results reached by the court—(1) five justices[4] found the portion of the city drug testing program that tested *all job applicants conditionally approved for employment* was valid under the Fourth Amendment of the United States Constitution and under the California Constitution privacy clause and (2) four justices[5] found the portion of the city drug testing program that tested *all existing employees conditionally approved for a promotion* was invalid under the Fourth Amendment of the United States Constitution.[6] (See 14 Cal.4th at p. 853, fn. 1.) The majority of the court reaffirmed the *Hill* test, but made clear that the primary focus of a state constitutional privacy claim in the employee drug testing context is a reasonableness balancing test—balancing the drug test's intrusion on the reasonable expectations of the employee against the drug test's promotion of

[4]Chief Justice George and Justices Baxter, Werdegar, Chin, and Brown.

[5]Chief Justice George and Justices Mosk, Kennard, and Werdegar.

[6]The lead opinion found the drug testing program violated the Fourth Amendment because it required testing of every employee "without regard to the nature of the position sought." (*Loder, supra,* 14 Cal.4th at pp. 880-881.) A majority of the justices did not agree on the validity of prepromotional employee drug testing under the *California Constitution*. Three justices did not reach the issue. (*Id.* at p. 887 (lead opn.); *id.* at p. 921 (conc. & dis. opn. of Kennard, J.).)

the employer's legitimate interests. (*Loder, supra,* 14 Cal.4th at pp. 891-898[7]; *id.* at p. 922 (conc. & dis. opn. of Chin, J.).)

## II.   *Analysis*

### A.   *The Existence of Reasonable Cause Is Relevant to the Constitutional Analysis*

■ The thrust of Upper Deck's summary judgment and its appellate arguments is that its *"reasonable cause"* drug testing *program* is valid under the state constitutional privacy clause. However, as revealed in her complaint, Kraslawsky's invasion of privacy cause of action was not a facial challenge to Upper Deck's drug testing *program.* Rather, Kraslawsky claimed her privacy rights were violated by the manner in which the program was applied to her. Kraslawsky's complaint alleged "Upper Deck . . . *demanded without good cause or reason, and at random,* that plaintiff immediately submit to a drug test. . . . [S]uch action . . . constituted a violation of her constitutional rights to privacy." Consistent with this allegation, Kraslawsky sought to defeat Upper Deck's summary judgment motion by submitting evidence showing that Upper Deck had no reasonable cause for believing she was under the influence of drugs. Kraslawsky claimed that because reasonable cause did not exist, she was subjected to a random drug test, thereby violating her right of privacy.

Upper Deck does not attempt to argue that a *random* drug test would be consistent with the state Constitution's privacy provision.[8] Instead, Upper Deck maintains that the existence of reasonable cause is not relevant here because its reasonable cause *policy* was constitutional. Upper Deck thus contends that if an employer maintains a constitutionally valid suspicion-based testing policy, the fact that the suspicion did not actually exist does not matter.

We disagree. Under *Loder,* the constitutionality of a drug test under the California Constitution is evaluated by balancing the employee's reasonable expectation of privacy against the employer's legitimate interests in imposing the test. (*Loder, supra,* 14 Cal.4th at pp. 889-898.) In the absence of reasonable cause for a particular urinalysis request, the outcome of this

---

[7]All references to *Loder* are to the lead opinion unless otherwise specified.

[8]While a majority of the Supreme Court has not yet expressly reached the issue of random drug testing under the California Constitution, in the Fourth Amendment context the courts generally hold a drug test of an existing employee without any individualized suspicion is unreasonable, unless the employee is in a safety or security sensitive position. (*American Federation of Government Employees, AFL-CIO* v. *Roberts* (9th Cir. 1993) 9 F.3d 1464; see *Loder, supra,* 14 Cal.4th at p. 881, fn. 12.)

balancing test may be different. If a drug test is not triggered by a reasonable belief the employee is intoxicated, the employee may have a stronger reason to expect to maintain his or her privacy and the employer may have less need to demand the test.

These principles apply with particular clarity in this case. Kraslawsky, an executive secretary whose job duties were neither safety nor security sensitive, had a substantial expectation that she would not be required to take a *random* drug test. As a condition of employment, she agreed to submit to suspicion-based testing; she was not asked and did not agree to random testing. In fact, Kraslawsky was given notice that such action would *not* occur. The employee handbook explicitly states that an employee may be asked to submit to a drug test based on "reasonable cause" to suspect the employee was violating the company's drug and alcohol policy. Based on the handbook, Kraslawsky could reasonably infer that she would not be subjected to a random test. Further, there are no circumstances particular to Upper Deck's employment environment or Kraslawsky's job position that would have reduced Kraslawsky's expectations of privacy in the context of a random drug test.

By comparison, absent reasonable cause, Upper Deck's legitimate need to require the drug test was substantially reduced. Upper Deck's stated reasons for conducting employee drug tests were expressly premised on a reasonable cause program. Upper Deck admitted it did not use, nor favor, random testing. Additionally, there were other less intrusive ways Upper Deck could have satisfied its objective of ensuring a drug-free workplace, rather than imposing random drug tests on existing employees. (See *Loder, supra,* 14 Cal.4th at p. 883 ["[A]n employer generally need not resort to *suspicionless* drug testing to determine whether a current employee is likely to be absent from work or less productive or effective as a result of current drug or alcohol abuse . . . ." (Italics added.)].)

The Fourth Amendment decisions applying a similar balancing test do not support Upper Deck's position. In determining the constitutionality of a particular drug test demand (as opposed to a facial challenge), the federal courts regularly conduct a factual analysis as to the extent to which the employer had reasonable cause to require the test. (See *Benavidez* v. *City of Albuquerque* (10th Cir. 1996) 101 F.3d 620, 623-624; *Ford* v. *Dowd* (8th Cir. 1991) 931 F.2d 1286, 1290-1294; *Copeland* v. *Philadelphia Police Dept.* (3d Cir. 1988) 840 F.2d 1139, 1143; see also *Safford* v. *Department of Fire* (La.App. 1993) 627 So.2d 707, 709-710.)

We are persuaded the issue of reasonable cause is relevant to determining the constitutionality of Upper Deck's drug test demand. A contrary holding

would essentially give an employer with a constitutionally valid drug testing *policy* a free license to conduct random testing, regardless of the circumstances. This result would be inconsistent with the privacy rights protected by our state Constitution.

### B.  *Existence of Factual Issue as to Reasonable Cause*

Upper Deck argues alternatively that in moving for summary judgment it established the existence of reasonable cause and Kraslawsky's opposition failed to create a triable issue of fact on this issue. Reasonable cause connotes an objective standard. While the standard is not difficult to meet, it necessarily requires a showing of specific objective facts and rational inferences from those facts supporting the conclusion that an employee was under the influence of intoxicants. (See *Garrison* v. *Department of Justice* (Fed.Cir. 1995) 72 F.3d 1566, 1567 [discussing "reasonable suspicion" in the Fourth Amendment context]; *Ford* v. *Dowd, supra*, 931 F.2d at p. 1292 [same].) Thus, to prevail on its summary judgment motion, Upper Deck was required to establish undisputed facts creating an objective basis to believe Kraslawsky was under the influence of drugs or alcohol.

### 1.  *Summary Judgment Factual Record*

To establish it had objectively reasonable cause to believe Kraslawsky was intoxicated, Upper Deck proffered evidence that two of its managers briefly observed Kraslawsky on the late afternoon of March 10 and suspected Kraslawsky was "under the influence of intoxicants." This evidence consisted of the deposition transcripts of Stephen E. Poludniak, an Upper Deck vice-president, and Sheri Clift, Upper Deck's personnel manager. These deposition transcripts established the following:

On the afternoon of March 10, 1992, Poludniak walked by Kraslawsky's desk and "saw her kind of slumped over" at a "45 degree angle" and "[k]ind of like with her elbows on her legs." Poludniak stood there for about 30 seconds, believing Kraslawsky was going to pick something up. When Kraslawsky did not sit back up, Poludniak asked whether everything was okay. Kraslawsky "kind of cranked her head to the right to look at [Poludniak] without moving up and said something again," without making eye contact. Poludniak could not understand what she said. Poludniak asked Kraslawsky where her boss was. Kraslawsky did not respond.

Poludniak then walked back into his office and called personnel director Clift. Poludniak told Clift he believed there was a "problem" with Kraslawsky. Poludniak was concerned Kraslawsky "may be having some sort of

female problems and [he] wasn't exactly sure how to handle that." Poludniak said he didn't "know anything about medical stuff so I wasn't sure what I was actually seeing [but] at that time I kind of got this idea something was wrong physically with [Kraslawsky]."

Clift then spoke briefly with Kraslawsky. Clift observed that Kraslawsky's "speech was slurred, that her demeanor was lethargic, that she was swaying, that her eye contact was not there, that it seemed to be deliberate in the answers, it was very controlled and very deliberate." Kraslawsky denied drinking or being on medication. Clift said she "did not know what was wrong with [Kraslawsky] but I had a suspicion that there was something wrong, whether it was medication, whether it was alcohol, whatever, there was a suspicion that she was not acting like Jan Kraslawsky." When asked at her deposition whether she believed Kraslawsky was under the influence of alcohol, Clift responded "I did not know what influence she was under but I did have a suspicion that something was controlling her other than just being tired." Based on the foregoing, Clift and Poludniak made the decision to demand that Kraslawsky submit to a urinalysis drug test.

In opposing summary judgment, Kraslawsky refuted these facts by relying on her own declaration. Kraslawsky stated that when Poludniak first approached her on the afternoon of March 10, she was "sitting up in [her] chair reading some papers." In response to Poludniak's question, Kraslawsky told Poludniak her supervisor was in a meeting in the conference room and pointed to the room. Poludniak "nodded," and said " 'have him call me.' " Five minutes later, Clift told Kraslawsky to step into a nearby office and asked Kraslawsky a series of questions. Kraslawsky "answered all of the questions in [her] normal manner of speaking and indicated [she] felt fine." Five minutes later, at about 4 p.m., Clift's assistant told Kraslawsky to "go get a drug test and then come back to work." The drug lab was approximately 10 to 15 miles away. Kraslawsky was required to drive herself to the lab. Kraslawsky has never used illegal drugs, does not drink alcoholic beverages, was not under the influence of prescription medication or other drugs, and was not feeling ill or unusually tired.

Kraslawsky also submitted facts reflecting that Poludniak may have had ulterior motives in demanding the drug test.[9] Approximately one week before he purportedly observed Kraslawsky "slumped over," Poludniak called a lunch meeting with all company executive secretaries. At the

[9]Upper Deck contends we may not consider this evidence because it was not before the court in the summary judgment motion. We disagree. The evidence was contained in Kraslawsky's prior declaration filed on November 10, 1993. Our review of the record, including the reporter's transcript, shows that this prior declaration was before the court on this summary judgment motion.

meeting, "Poludniak announced that all overtime pay for executive secretaries would cease immediately." Kraslawsky "spoke up in protest." Kraslawsky "said it was not fair that the company would require this of [her] and then not be willing to pay." Poludniak "did not respond, but became very red-faced and appeared upset." The next Monday, Kraslawsky stopped working overtime. Kraslawsky was terminated the next day.

Kraslawsky further relied on additional deposition transcripts of Poludniak and Clift, indicating that neither Clift nor Poludniak had formal training in detecting drug or alcohol use. In her deposition, Clift also admitted she never told Poludniak that she believed Kraslawsky was intoxicated or under the influence of drugs. Instead, after speaking with Kraslawsky, Clift "gave [Poludniak] [her] assessment of the situation and [she] came to the conclusion that [she] was concerned enough to want to find out what [the problem] was [by demanding that Kraslawsky submit to a drug test]."

### 2. *Existence of Triable Issue of Fact*

Upper Deck proffered evidence showing that Kraslawsky acted in an objectively intoxicated manner (Kraslawsky was bent over at her desk, her "speech was slurred," her demeanor was "lethargic," she was "swaying," "her eye contact was not there," and her speech was "very controlled and very deliberate"). In opposition, Kraslawsky submitted evidence that *directly contradicted these facts.* In her declaration, Kraslawsky expressly denied that she was bent over at her desk when Poludniak approached her. She said that when Poludniak "walked up to my work area and demanded to know the location of Mr. Loiacono[,] I was sitting up in my chair reading some papers. I looked up at Mr. Poludniak, motioned to a conference room and said '[h]e's in there.' " Kraslawsky also stated that she answered all of Clift's questions "in my normal manner of speaking and indicated I felt fine."

Upper Deck argues Kraslawsky's declaration is not "evidence of how others perceived her or how she appeared to others on March 10, 1992." (Italics deleted.) We disagree. Kraslawsky's description of her own conduct was competent to place the issue in dispute as to what occurred on the afternoon of March 10. If believed, Kraslawsky's statements negate the underlying facts used by Upper Deck to establish reasonable cause. While Kraslawsky's opposition would certainly have been stronger if she had proffered supporting evidence from other witnesses, a plaintiff need only create a material factual issue to defeat a summary judgment motion. Further, on the record before us, there was no evidence that anyone else saw Kraslawsky during the very brief period that Upper Deck contends she was acting intoxicated.

Contrary to Upper Deck's assertions, we are not suggesting that a plaintiff may defeat summary judgment merely by offering a declaration stating he or she was not in fact intoxicated. (See *Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 979 [243 Cal.Rptr. 277].) Rather, the plaintiff must come forward with facts disputing that the employer had a reasonable basis to believe the employee was under the influence of drugs or alcohol. Kraslawsky's declaration created a factual issue as to whether there were any objective facts supporting Upper Deck's claims that Kraslawsky appeared intoxicated.

Further, Kraslawsky not only submitted her own declaration describing her conduct on the afternoon of March 10, but she also relied on additional facts supporting an inference that the objective circumstances did not establish reasonable cause to drug test. Kraslawsky proffered evidence of the recent executive secretary's meeting revealing a reason Poludniak would have wanted to create a pretext for terminating Kraslawsky. There was also evidence that neither Clift nor Poludniak believed Kraslawsky was intoxicated with drugs or alcohol. Poludniak thought Kraslawsky was having "female" or other unidentified "medical" problems; Clift vaguely thought "something was wrong" and believed a drug test would help identify what that was. The evidence also showed that Upper Deck had planned to permit Kraslawsky to drive alone to the medical facility and, when she refused to take the test, allowed Kraslawsky to drive 60 miles home. While such facts are not conclusive of the reasonable cause issue, they are relevant to the analysis and reasonably could support an inference that Upper Deck's drug test demand was random or pretextual, rather than based on objective individualized suspicion.

An employer must be given wide leeway in executing its reasonable cause drug testing policy. Such policy, however, cannot be used as a shield when there is credible evidence raising an inference that reasonable cause did not exist. Viewing the evidence in its entirety, we conclude a factual question exists as to whether Upper Deck had reasonable cause to believe Kraslawsky was under the influence of intoxicants. Accordingly, the evidence must be presented to a jury to determine (1) whether the objective factors Upper Deck contends existed did or did not exist; and (2) whether the objective factors found to exist constitute reasonable cause.

### C.  *Additional Arguments*

Upper Deck asserts a number of other reasons that Kraslawsky cannot prevail on her state constitutional privacy claim even if there was no

reasonable cause for the drug test. We address these arguments briefly below.

Upper Deck first states that Kraslawsky had no reasonable expectation of privacy because the urinalysis test would not have been visually monitored. Upper Deck argues that such "unobserved testing is not actionable under *Hill* because it is at most a slight, not serious, intrusion." (Italics omitted.) We do not read *Hill* so narrowly. Although *Hill* emphasized the NCAA's policy of direct observation of urination in finding that the invasion of privacy rights was "serious" (*Hill, supra,* 7 Cal.4th at p. 43), nothing in the opinion supports a blanket conclusion that a nonvisually monitored drug test would be per se valid. In *Loder,* as here, the urinalysis test was monitored by a nurse listening for urination sounds outside the toilet area and employees were required to respond to a written inquiry concerning their current medications. (*Loder, supra,* 14 Cal.4th at pp. 854-855.) A majority of the justices found such monitoring sufficiently intruded on a nonsecurity/non-safety-sensitive employee's privacy right so as to create an unconstitutional invasion of privacy under the Fourth Amendment. (See *Loder, supra,* at pp. 896-897, *id.* at p. 917 (conc. and dis. opn. of Mosk, J.), *id.* at p. 919 (conc. and dis. opn. of Kennard, J.).) We are not persuaded Upper Deck's testing procedure eliminates Kraslawsky's privacy claim under the California Constitution.

■ Upper Deck next argues Kraslawsky consented to the drug test. However, as explained above, this argument is supported only if there was reasonable cause for the test. There is no evidence Kraslawsky consented to a random drug test. Further, consent is generally viewed as a factor in the balancing analysis, and not as a complete defense to a privacy claim. (See *Loder, supra,* 14 Cal.4th at pp. 886-887, fn. 19; *American Federation of Labor* v. *Unemployment Ins. Appeals Bd.* (1994) 23 Cal.App.4th 51, 66 [28 Cal.Rptr.2d 210]; but see *Loder, supra,* 14 Cal.4th at pp. 933-938 (conc. and dis. opn. of Brown, J.).)

Upper Deck additionally argues Kraslawsky had no reasonable expectation of privacy because she had already submitted to a preemployment drug test. This argument fails under *Loder.* A majority of the *Loder* court refused to hold an existing employee's prior applicant drug test was sufficient to eliminate the employee's reasonable expectations of privacy.

We additionally reject Upper Deck's argument that Kraslawsky agreed to continue to provide medical information to her employer. Upper Deck relies on portions of the employee handbook concerning the need for an employee

to provide a doctor's note after a medical leave or illness and the procedures for a work-related injury. These provisions do not establish Kraslawsky would have reasonably understood she had given up her privacy rights in connection with a drug test.

### III. *Emotional Distress and Wrongful Termination Claims*

█ In addition to her constitutional privacy claim, Kraslawsky alleged wrongful termination in violation of public policy and intentional infliction of emotional distress. We conclude the court erred in granting summary judgment on the wrongful termination claim, but properly granted summary judgment on the intentional infliction claim.

Upper Deck moved for summary judgment on the wrongful termination claim based only on its assertion that Kraslawsky had no actionable privacy claim. Since we have determined that judgment must be reversed on the privacy claim and since Upper Deck does not proffer any other basis for affirming the summary judgment on this claim, we must necessarily reverse the summary judgment on the wrongful termination cause of action.[10]

█ With respect to the intentional infliction of emotional distress claim, summary judgment was proper. "The emotional distress tort is committed when defendant's conduct is intentionally intrusive and outrageous and has a severe and traumatic effect on the plaintiff's emotional tranquility." (*Semore* v. *Pool, supra,* 217 Cal.App.3d at p. 1103.) A claim is not actionable unless the plaintiff establishes defendant's conduct "exceeds all bounds usually tolerated by a decent society." (*Id.* at p. 1104.)

In moving for summary judgment, Upper Deck maintained Kraslawsky could not establish that its conduct was "outrageous." Kraslawsky responded by arguing the issue was "a question of fact." Kraslawsky's intentional infliction claim is based on Upper Deck's request that she take a urinalysis test, involving a testing procedure that Kraslawsky admitted she did not find overly intrusive. Even assuming the facts are as stated in Kraslawsky's declaration and there was no individualized suspicion for the test, Kraslawsky cannot establish Upper Deck's conduct went " 'beyond all bounds of decency.' " (*Semore* v. *Pool, supra,* 217 Cal.App.3d at p. 1104.)

---

[10]We recognize the courts have not been entirely consistent on the issue whether a state constitutional invasion of privacy constitutes a fundamental public policy for purposes of wrongful termination. (See *Pettus* v. *Cole* (1996) 49 Cal.App.4th 402, 452-457 [57 Cal.Rptr.2d 46]; *Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 26-29 [267 Cal.Rptr. 618]; *Semore* v. *Pool* (1990) 217 Cal.App.3d 1087 [266 Cal.Rptr. 280].) Upper Deck, however, has never raised the issue in moving for summary judgment or on appeal. We therefore decline to rule on the issue.

## DISPOSITION

We reverse the summary judgment on Kraslawsky's state constitutional privacy and wrongful termination claims. We affirm the judgment in all other respects. Upper Deck to bear costs on appeal.

Work, Acting P. J., and McIntyre, J., concurred.