**Melynda SLAUGHTER, Plaintiff–Appellant,**

**v.**

**JOHN ELWAY DODGE SOUTHWEST/AUTONATION, Defendant–Appellee.**

No. 03CA1346.

Colorado Court of Appeals, Division V.

Jan. 13, 2005.

Gregg C. McReynolds, LLC, Gregg C. McReynolds, Denver, Colorado, for Plaintiff–Appellant.

Holland & Hart LLP, Alan D. Schuchman, Megan C. Bertron, Denver, Colorado, for Defendant–Appellee.

Opinion by: Judge CARPARELLI.

Plaintiff, Melynda Slaughter, sued her employer, defendant, John Elway Dodge Southwest/AutoNation, for wrongful termination and now appeals the trial court's judgment dismissing her complaint for failure to state claims upon which relief may be granted. We affirm.

Because this appeal challenges the trial court's dismissal on grounds of failure to state a claim, the following summary of facts is based solely on the allegations in employee's complaint.

Employee alleges that when she was hired, she was told she would be required to submit to a drug test to qualify for the position. Shortly after she began working, she consented when employer took a hair sample from her for the drug test. She continued her employment, heard nothing more about the drug test, and was promoted and given a raise.

Nearly a year after she was hired, employer informed her that it had overlooked the drug test result, which was positive for marijuana. Employer informed her that she could take another drug test, resign, or be terminated. Employee volunteered that she occasionally used marijuana for recreational purposes, but never used marijuana at work and was never under its influence while at work.

The next day, employer told employee she had to submit a hair sample that day or she would be terminated. Employee consented, and a hair sample was taken. The following day employer told her the drug test had been inconclusive and requested that she submit another hair sample. When employee refused, employer told her that she would be terminated.

About a month later, without filing a complaint, employee filed a motion for a temporary restraining order and, on the same day, served a copy on employer's in-house attorney. The court declined to enter a restraining order, but set the matter for a preliminary injunction hearing. A week after employee filed her motion, her counsel received a faxed letter from employer's counsel stating that employee had been terminated effective the same day she filed the motion. After receiving the letter, employee withdrew her motion and informed employer's counsel she would file suit for wrongful termination.

Employee's complaint stated two claims for relief. One claim alleged the termination was retaliation for her motion for a temporary restraining order and, thus, violated public policy as expressed in the Freedom of Legislative and Judicial Access Act (Act), § 8–2.5–101, C.R.S.2004. The other claim alleged the termination was wrongful because it was retaliation for her refusal to submit to the drug test and, thus, violated public policy against private interference with her right to privacy.

The trial court dismissed both claims in response to employer's motion under C.R.C.P. 12(b)(5) concluding that employee failed to state a claim for which relief could be granted.

## I. Standard of Review

We review motions to dismiss de novo and accept all statements of material fact contained in the complaint as true. *Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo.1992). We construe those allegations in the light most favorable to the plaintiff and do not look outside the complaint. *Dunlap v. Colo. Springs Cablevision, Inc.*, 829 P.2d 1286 (Colo.1992); *McDonald v. Lakewood Country Club*, 170 Colo. 355, 461 P.2d 437 (1969). We will not uphold a dismissal on motion for failure to state a claim so long as the plaintiff may be entitled to some relief upon any theory of the law. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095 (Colo.1995).

## II. Wrongful Termination of At–Will Employment

An employment agreement for an indefinite term is presumed to establish an

at-will relationship that either party may terminate at any time with or without cause. *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). However, a contract provision that permits termination of an at-will employment contract is unenforceable when it violates public policy. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992). As pertains here, an employee may have a cause of action when the employer directs the employee, and the employee refuses, to perform an act that "would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker." *Martin Marietta Corp. v. Lorenz, supra,* 823 P.2d at 109.

■ A clearly expressed public policy is one that is "clearly mandated such that the acceptable behavior is concrete and discernible as opposed to a broad hortatory statement of policy that gives little direction as to the bounds of proper behavior." *Rocky Mountain Hosp. & Med. Serv. v. Mariani,* 916 P.2d 519, 525 (Colo.1996).

Courts are reluctant to give public policy an expansive definition because it would cloud the limits of the exception to at-will employment. *Rocky Mountain Hosp. & Med. Serv. v. Mariani, supra.*

### III. *Alleged Violation of Public Policy Regarding Access to the Courts*

■ Employee contends that the court erred when it dismissed her second claim for relief alleging that employer violated public policy regarding access to the courts as reflected in § 8–2.5–101. We disagree.

Section 8–2.5–101 makes it a misdemeanor for any person

> to adopt or enforce any rule, regulation, or policy forbidding or preventing any of its employees, franchisees, or agents or entities under its control or oversight from, or to take any action against its employees, franchisees, or agents or entities under its control or oversight solely for testifying before a committee of the general assembly or a court of law or speaking to a member of the general assembly at the request of such committee, court, or mem-

ber regarding any action, policy, rule, regulation, practice, or procedure of any person or regarding any grievance relating thereto.

Section 8–2.5–101(1)(a), C.R.S.2004.

In addition, § 8–2.5–101(2)(a), C.R.S.2004, entitles a person to recover damages for injuries suffered as a result of a violation of the statute.

■ When interpreting a statute, we must give effect to the intent of the General Assembly. To do so, we first look to the plain language of the statute. *Schoen v. Morris,* 15 P.3d 1094 (Colo.2000). When the language is clear, we apply that language according to its plain and ordinary meaning. *Vaughan v. McMinn,* 945 P.2d 404 (Colo. 1997).

This statute clearly expresses public policy regarding employees' responsibilities as citizens to honor requests for testimony from courts and from committees and members of the General Assembly. It also clearly expresses public policy regarding an employee's right to be free from employer rules, regulations, or policies that would forbid or prevent the employee from fulfilling those responsibilities and to be free from termination or other adverse employment action solely for fulfilling them.

However, contrary to employee's assertion, we conclude that § 8–2.5–101 does not clearly mandate a general public policy protecting access to the courts. Although it concretely and discernibly prohibits employers from forbidding or preventing employees from honoring requests for their testimony, it provides no direction limiting employers' conduct when employees initiate legal action against them. As is pertinent here, we perceive no basis to conclude that the statute clearly expresses a public policy that forbids an employer from terminating an employee for filing a motion or a lawsuit against the employer.

Here, employee did not allege that employer prohibited her from honoring a request to testify from a court or the General Assembly. Nor did she allege that employer terminated her for honoring such a request. Instead, she alleged she was terminated because she

filed a motion for a temporary restraining order.

Therefore, we conclude that employee did not state a claim upon which relief may be granted for a violation of the public policy clearly expressed in § 8–2.5–101.

### IV. Alleged Violation of Public Policy Relating to Employee Privacy Rights

Employee also contends the court erred when it dismissed her first claim for relief because employer violated public policy protecting her right to privacy. She argues that this court should prevent private employers from requiring employee drug tests absent reasonable suspicion of drug use or health and safety issues. We disagree.

Employee relies on the *Practitioner's Guide to Colorado Employment Law* § 9.1.2 (1998 ed. & Supp.2004), to contend that the right of privacy includes the right to control personal information, exemplified by medical and drug testing questionnaires, background checks, electronic mail searches, and video surveillance. She argues that the public policy is established in the Fourth Amendment of the Constitution of the United States; article II, § 3 of the Colorado Constitution; and the common law tort of invasion of privacy.

The essential question we must resolve is whether employer directed the employee, and the employee refused, to perform an act that would undermine a clearly expressed public policy relating to employee's right or privilege as a worker. *Martin Marietta Corp. v. Lorenz, supra.*

### A. Fourth Amendment

■ Drug testing of public employees constitutes a search under the Fourth and Fourteenth Amendments and, therefore, a *public employer* may not conduct such a test without individualized suspicion of wrongdoing. *Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). Here, however, employee contends that the Fourth Amendment gives rise to a right of privacy that limits the actions of her *private employer.*

She relies on several federal and state court decisions to argue that, because there is a strong public policy in favor of protecting public employees' rights of privacy, common sense dictates that the same public policy should be applied to private employees asked to undergo drug tests by private employers. She cites the following cases: *Nineteen Solid Waste Dep't Mechs. v. City of Albuquerque,* 156 F.3d 1068 (10th Cir.1998)(public employer's drug testing policy violated employee's right to privacy under the Fourth Amendment absent special need for the policy); *United Teachers v. Orleans Parish Sch. Bd.,* 142 F.3d 853 (5th Cir.1998)(public employer's requirement that injured employees must submit to drug testing violates Fourth Amendment); *Trinidad Sch. Dist. No. 1 v. Lopez,* 963 P.2d 1095 (Colo.1998)(public employer's drug testing policy did not violate school's marching band members' right to privacy under the Fourth Amendment).

These cases reflect the fundamental premise that the Fourth Amendment limits government conduct, not private conduct. Employee has cited, and we are aware of, no federal or Colorado case that has held that the Fourth Amendment gives rise to a public policy regarding the conduct of private individuals and entities.

### B. State Constitution and Laws

Appellant cites cases in which state courts have found that their constitutions, statutes, and common law clearly express public policies relating to employees' rights to refuse to submit to drug testing by their employers. *See Doyon v. Home Depot U.S.A., Inc.,* 850 F.Supp. 125 (D.Conn.1994)(private employer's postaccident drug testing policy violated statutory provision prohibiting employers from requiring an employee to submit to urinalysis testing without reasonable suspicion); *Hennessey v. Coastal Eagle Point Oil Co.,* 129 N.J. 81, 609 A.2d 11 (1992)(mandatory random urine testing by private employers can be an invasion of privacy sufficient to breach public policy derived from common law and existing state constitutional privacy protections); *Kraslawsky v. Upper Deck Co.,* 56 Cal.App.4th 179, 65 Cal.Rptr.2d 297 (1997)(state constitutional guarantee of the

right to pursue and obtain privacy creates a right of action against private as well as government entities); *Twigg v. Hercules Corp.*, 185 W.Va. 155, 406 S.E.2d 52 (1990)(mandatory employee drug testing contrary to public policy derived from common law precedent recognizing trespass as an invasion of the right of privacy and statutory prohibition against mandatory employee polygraph testing).

However, other courts have found no clearly expressed employee right to refuse drug testing and, therefore, have permitted employers to require employee drug testing. *Wilkinson v. Times Mirror Corp.*, 215 Cal. App.3d 1034, 264 Cal.Rptr. 194 (1989)(private employer's offer of employment conditional on submission to the drug test not a violation of the right to privacy under the state constitution); *Webster v. Motorola, Inc.*, 418 Mass. 425, 637 N.E.2d 203 (1994)(private employer's universal drug testing program did not violate employee driver's statutory privacy rights); *Folmsbee v. Tech Tool Grinding & Supply, Inc.*, 417 Mass. 388, 630 N.E.2d 586 (1994)(private employer's drug testing program did not violate the statutory right to privacy).

■ Based on our constitution and statutes, we conclude that Colorado does not have a clearly expressed employee right to refuse drug testing. Article II, § 3 of the Colorado Constitution provides as follows:

Inalienable rights. All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness.

Employee contends that a public policy relating to an employee's right to be free of workplace drug testing can be derived by analogy from public policies reflected in various Colorado statutes. *See, e.g.,* §§ 1–7–102, 8–2–102, 8–73–101 et seq., 13–71–126, 28–3–506, 30–30–415.5, C.R.S.2004.

Employee neither cites nor discusses § 8–73–108(5)(e)(IX.5), C.R.S.2004, which provides that an employer shall not be charged for unemployment benefits when it has a previously established written drug policy and terminates an employee as the result of a drug test showing the presence of marijuana in the employee's system during working hours. *See* §§ 12–22–303(7), 18–18–102(5), C.R.S.2004.

We conclude that § 8–73–108(5)(e)(IX.5) provides a concrete and discernible standard of acceptable employer conduct. *See Rocky Mountain Hosp. & Med. Serv. v. Mariani, supra.* It clearly establishes that it is acceptable for an employer to have a written drug policy and to terminate an employee as the result of a drug test showing the presence of marijuana in the employee's system during working hours. The other statutes cited by appellant are not contradictory and do not compel a contrary conclusion.

Because § 8–73–108(5)(e)(IX.5) plainly recognizes an employer's right to conduct drug testing, we reject employee's contention that there is a clearly expressed public policy relating to an employee's right to refuse to participate in drug testing when the employer has a previously established written policy.

Therefore, applying the standard established in *Martin Marietta Co. v. Lorenz, supra,* we conclude that an employer with a previously established written drug policy who directs an employee to take a drug test does not undermine public policy relating to the employee's rights as a worker.

In so holding, we also note that employee consented to employer's policy when she was hired and she consented to the taking of two hair samples. Her complaint does not allege, and her opening brief does not argue, that analysis of her hair sample would not have been probative of the presence of marijuana in her system during work hours.

### C. Common Law Invasion of Privacy

Employee did not state a claim for invasion of privacy and does not argue otherwise. Instead, she argues that a clearly expressed public policy relating to her rights as a worker can be found in tort law regarding invasion of privacy. We disagree.

■ The law of privacy underlies several torts for invasion of privacy. Although the

torts share a common name and refer to interference with a person's right of privacy, each tort is quite different. Colorado courts have recognized the existence of three such torts: (1) unreasonable intrusion on the seclusion of another, *Doe v. High–Tech Inst., Inc.*, 972 P.2d 1060 (Colo.App.1998); (2) unreasonable publicity given to another's private life, *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371 (Colo.1997); and (3) appropriation of another's name or likeness, *Joe Dickerson & Assocs., Inc. v. Dittmar*, 34 P.3d 995 (Colo. 2001).

The tort of invasion of privacy by intrusion "requires an unreasonable manner of intrusion or an intrusion for an unwarranted purpose." *Denver Publ'g Co. v. Bueno*, 54 P.3d 893 (Colo.2002); *Doe v. High–Tech Inst., supra.*

However, this tort does not clearly mandate a public policy that an employer may not direct an employee to take a drug test in compliance with a previously established drug policy. *See Rocky Mountain Hosp. & Med. Serv. v. Mariani, supra.* Consequently, and because § 8–73–108(5)(e)(IX.5) so plainly recognizes an employer's right to conduct drug testing, we reject employee's contention that an employee's right to refuse drug testing is clearly expressed in the tort of invasion of privacy.

Thus, we conclude that there is no public policy exception that entitles an at-will employee to refuse to comply with an employer's previously existing written policy requiring drug testing. And, therefore, we conclude that the trial court did not err when it concluded that employee's first cause of action failed to state a claim for wrongful termination.

Judgment affirmed.

Judge DAILEY and Judge HUME* concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and