United States Court of Appeals,

Fifth Circuit.

No. 95-30987.

Larry AUBREY, Plaintiff-Appellant,

v.

SCHOOL BOARD OF LAFAYETTE PARISH;  Freedom Recovery Center, Inc., Defendants-Appellees.

Aug. 22, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before BENAVIDES, STEWART and DENNIS, Circuit Judges.

STEWART, Circuit Judge:

Larry Aubrey ("Aubrey"), a custodian employed by the Lafayette Parish School Board ("Board"), claims that the District Court's grant of summary judgment to the Board was based on an erroneous finding that his position was "safety-sensitive" for purposes of random drug testing.  We find that a number of issues of fact remained as to the promulgation of the drug testing policy and the actual duties that Aubrey performed, and thus the Board had not established that it was entitled to judgment as a matter of law.  Therefore, we REMAND for proceedings consistent with this opinion.

FACTS

On September 28, 1994, the Board requested that Aubrey submit to a random urinalysis screening.  The tests indicated the presence of tetrahydrocannabinol ("THC"), the active chemical in marijuana.  As an alternative to firing him, the Board required that Aubrey attend a substance abuse program at the Freedom Recovery Center, Inc. ("the Center").  Denying that he had used marijuana, Aubrey subsequently filed suit against the Board, and requested that an injunction issue barring the Board from firing him or requiring that he continue to attend the substance abuse program.  Aubrey also filed a state medical malpractice claim against the Center.  At the injunction hearing, the district court granted Aubrey's request to the extent that Aubrey was permitted to undergo individual therapy as opposed to group therapy at the Center.  He was also required to submit to periodic drug testing.

1

The Center filed a motion to dismiss for lack of subject matter jurisdiction, and the Board moved for summary judgment, arguing that its drug testing policy was not unconstitutional. Aubrey likewise moved for summary judgment on the basis that the Board's actions violated his constitutional rights. The district court granted the Center's motion to dismiss. It also granted the Board's motion for summary judgment, finding that the job of being a custodian in an elementary school is "safety sensitive" because the custodian handles poisonous solvents and lawn mowers, things that could be dangerous to small children if not handled in a safety-conscious manner. While Aubrey's notice of appeal indicated that he was appealing both findings, he states clearly in his brief that he is only appealing to this court from the grant of summary judgment to the Board.

DISCUSSION

*Standard of Review*

We review a grant of summary judgment de novo, applying the same standard used by the district court, and in reviewing the facts, we draw all inferences most favorable to the party opposing the motion. *Elliott v. Lynn,* 38 F.3d 188, 190 (5th Cir.1994). Nevertheless, we do not weigh the evidence, assess its probative value, or resolve any factual disputes; we merely search the record for resolution-determinative factual disputes. *FDIC v. Myers,* 955 F.2d 348 (5th Cir.1992). Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

*Random Drug Testing and the Fourth Amendment*

Because the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, these intrusions are deemed searches under the Fourth Amendment. *Skinner v. Railway Labor Exec. Assn.,* 489 U.S. 602, 616, 109 S.Ct. 1402, 1412-13, 103 L.Ed.2d 639 (1989). The permissibility of a search is judged by balancing its intrusion on the

2

individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Skinner,* 489 U.S. at 619, 109 S.Ct. at 1414.

The Supreme Court has found that the government has a legitimate interest in ensuring the safety of the traveling public, and that interest justifies prohibiting certain railway workers from using alcohol or drugs on duty or while subject to being called for duty. *Skinner,* 489 U.S. at 621, 109 S.Ct. at 1415. The Court has also found that the government has a legitimate and even compelling interest in making sure that Customs Service employees who suffer from drug-related impaired perception and judgment will not be promoted to positions where they may need to employ deadly force. *Treasury Employees v. Von Raab,* 489 U.S. 656, 671, 109 S.Ct. 1384, 1393-94, 103 L.Ed.2d 685 (1989). These valid and compelling public interests must be weighed against the intrusion and interference with individual liberty that results from requiring these classes of employees to undergo a urine test. *Von Raab,* 489 U.S. at 671, 109 S.Ct. at 1393-94.

Intrusions that may be viewed as unreasonable in some contexts may be rendered entirely reasonable by the operational realities of the workplace. *See Von Raab,* 489 U.S. at 671, 109 S.Ct. at 1393-94. For example, the railway industry is heavily regulated to ensure the public's safety, and as a result certain train and engine employees' expectations of privacy are diminished. *Skinner,* 489 U.S. at 627, 109 S.Ct. at 1418-19. Likewise, Customs Service employees "who are directly involved in the interdiction of illegal drugs or who are required to carry firearms in the line of duty likewise have a diminished expectation of privacy in respect to the intrusions occasioned by a urine test." *Von Raab,* 489 U.S. at 672, 109 S.Ct. at 1394.

Furthermore, a workplace search that under other circumstances would be unreasonable may be rendered reasonable where its intrusion on privacy interests is minimized by procedures that prevent its being carried out in an arbitrary and oppressive manner. *See Von Raab,* 489 U.S. at 672, 109 S.Ct. at 1394. Such limiting procedures may include advance notice to the employee that he will be subject to random drug testing if he is accepted for a certain position. *See Von Raab,* 489 U.S. 672 n. 2, 109 S.Ct. at 1394 n. 2. In *Von Raab,* employees who were tentatively accepted for

3

promotion or transfer to one of the categories of positions at issue knew at the outset that a drug test was required. *Id.* Moreover, the Court noted that the procedures provided there would be no direct observation of the act of urination, and urine samples were to be examined only for the presence of specified drugs so that an employee did not need to disclose personal medical information unless his test result was positive. *Id.* Notice that one will be subject to random drug testing on the job reduces the element of surprise, and diminishes the expectation of privacy. *See International Brotherhood of Teamsters v. Department of Transportation,* 932 F.2d 1292, 1302 (9th Cir., 1991).

In the case at bar, the evidence produced for summary judgment showed that the School Board was concerned for the safety of the children at its elementary schools, and that it had implemented a written drug testing policy pursuant to Louisiana Revised Statute 49:1015. The Board adopted its policy on Dec. 16, 1992, almost two years prior to the date Aubrey was directed to take his urine test. That policy provides that random drug testing shall be limited to safety-sensitive positions. It does not delineate which positions at a Lafayette Parish School are to be considered safety-sensitive, and the record is otherwise silent on what actions if any the Board took to implement the policy between December 16, 1992 and September 28, 1994.

At the summary judgment hearing and before this Court, the Board argued that it considers that an elementary school custodian is a safety-sensitive position because a custodian handles chemical solvents, operates a lawn mower, works with electricity, and may be lighting gas pilot lights. As the district court found, when not properly handled, these things can pose serious dangers to small children, and from this it concluded that Aubrey's was a safety-sensitive position.

The notion that the life and safety of children is of paramount importance is unchallengeable; however, the paucity of the record gives us no indication whether the policy as promulgated will pass constitutional muster. No evidence was presented to show which positions are considered safety sensitive and which are not, or whether the policy at an elementary school would differ from that at a high school. Nor was any evidence presented to show whether employees in safety-sensitive positions had notice that they would be subject to random drug testing, or what kind of notice they

4

received, or even if Aubrey had received that notice. Moreover, there was no evidence to show how many custodians were employed at Aubrey's school or whether Aubrey himself actually performed aiption. After a full review of the record, we find that it does not contain enough summary judgment evidence to enable us to balance the government's need to protect small children against the intrusion on Aubrey's Fourth Amendment rights. Therefore, we find that the grant of summary judgment was premature and REVERSE and REMAND for proceedings consistent with this opinion.

Because we reverse the grant of summary judgment, we do not reach the issue of whether or not it was reasonable to deny Aubrey's request for a second drug test from a new sample. Moreover, because Aubrey did not argue the issue of the Center's dismissal for lack of subject matter jurisdiction, that issue is waived pursuant to Fed.R.Civ.P. 28. *See Zeno v. Great Atlantic & Pacific Tea Co.,* 803 F.2d 178, 180 (5th Cir.1986).