IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30885

_____

UNITED TEACHERS OF NEW ORLEANS; JEFFERSON FEDERATION OF TEACHERS;
PORTIA ELLY; MELANIE C JONES; FRANK BECKENDORF; GAIL THOMPSON;
LOUIS THOMPSON; MARILYN HORTON

                                        Plaintiffs-Appellants,

                            versus

ORLEANS PARISH SCHOOL BOARD, through; MORRIS HOLMES, Superintendent
in his official capacity, and the individual Orleans Parish School
sued in their official capacity named as follows:; MAUDELLE D.
CADE; GAIL GLAPION; SCOTT T SHEA; J BEHRENGER BRECHTEL; CAROLYN G
FORD; BILL BOWERS; CHERYL Q CRAMER; JEFFERSON PARISH SCHOOL BOARD,
through; ELTON LAGASSE, in his official capacity as the
Superintendent and the individual members of the Jefferson Parish
School Board sued in their official capacity named as follows:;
ROBERT WOLFE; BARRY BORDELON; O H GUIDRY; LAURIE ROLLING; CEDRIC
FLOYD; MARTIN MARINO; LIBBY MORAN; POLLY THOMAS; DR. GENE KATSANIS

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

May 29, 1998

Before WISDOM, HIGGINBOTHAM, and JONES, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

      Teachers and other employees attack drug testing rules of two

Louisiana school boards as contrary to the Fourth Amendment of the

United States Constitution and Article I, Section V, of the

Louisiana Constitution.  The rules of the two parish boards

requiring employees injured in the course of employment to submit a urine specimen are claimed to be both unreasonable searches and contrary to Louisiana Revised Statute 23:1121, which permits employees to seek medical treatment from the physician of their choice.

Plaintiffs demand injunctive relief, and several individuals also seek money damages. The district court denied a preliminary injunction. Today we decide plaintiffs' appeal from that denial.

I

l

The testing requirements at issue here are part of a larger regulatory scheme for state administration. Louisiana provides by statute that:

> A. A public employer may require, as a condition of continued employment, samples from his employees to test for the presence of drugs following an accident during the course and scope of his employment, under other circumstances which result in reasonable suspicion that drugs are being used, or as a part of a monitoring program established by the employer to assure compliance with terms of a rehabilitation agreement.
>
> B. A public employer may require samples from prospective employees, as a condition of hiring, to test for the presence of drugs.
>
> C. A public employer may implement a program of random drug testing of those employees who occupy safety-sensitive or security-sensitive positions.
>
> D. Any public employee drug testing shall occur pursuant to a written policy, duly promulgated, and shall comply with the provisions of this Chapter.
>
> . . . .

La. Rev. Stat. Ann. § 49:1015. Louisiana law governing workers'
compensation provides:

> (1) no compensation shall be allowed for an injury
> caused:
>
> . . . .
> (b) by the injured employee's intoxication at
> the time of the injury, unless the employee's
> intoxication resulted from activities which
> were in pursuit of the employer's interests or
> in which the employer procured the
> intoxicating beverage or substance and
> encouraged its use during the employee's work
> hours, or
>
> . . . .
> (5) if there was, at the time of the accident, evidence
> of either on or off the job use of a nonprescribed
> controlled substance as defined in 21 U.S.C. 812,
> Schedules I, II, III, IV, and V, it shall be presumed
> that the employee was intoxicated.
> . . . .
> (7)(a) For purposes of this Section, the employer has the
> right to administer drug and alcohol testing or demand
> that the employee submit himself to drug and alcohol
> testing immediately after the alleged job accident.
>
> (b) If the employee refuses to submit himself to drug and
> alcohol testing immediately after the alleged job
> accident, then it shall be presumed that the employee was
> intoxicated at the time of the accident.
> . . . .

La. Rev. Stat. Ann. § 23:1081. Pursuant to these statutes, the

Jefferson Parish School Board adopted the following policy:

> The Jefferson Parish School System will require, as a
> condition of continued employment, all employees to
> submit to a drug abuse screening panel and a blood
> alcohol test by the Jefferson Parish School board's
> designated agent for worker's compensation cases
> following an accident during the course and scope of
> employment. Laboratory work will be performed by the
> Board's designated drug testing laboratory. Failure to
> comply with this mandatory requirement may result in
> disciplinary action included, but not limited to,
> suspension without pay.

The Orleans Parish School Board adopted the following policy:

> In addition to pre-employment substance abuse screening,
> employment actions that shall require such testing may

3

include the following: Reasonable Suspicion that there has been a violation of rules and regulations pertaining to substance abuse, OPSB-required annual physical examinations, Post Accident/Post Incident screening, and during the six (6) month random testing period following disciplinary action and reinstatement.

2

The test requires production of a urine sample under supervision of a monitor. Males must face a urinal in the presence of the monitor. Females may repair to a stall where the monitor remains separated by a visual barrier but able to hear the sounds of the person urinating. This control is said to be necessary to the validity of the testing program.

3

Plaintiffs did not in seeking a preliminary injunction urge state law beyond a general assertion that Louisiana offered greater protection for privacy than the Constitution of the United States. The district court did not treat state law in its order denying preliminary injunctive relief, and state issues have not been urged here as an independent basis for relief. As have the parties, we review only the refusal to enjoin the testing as violative of the Fourth Amendment to the United States Constitution.

Plaintiffs urge that theirs is a facial attack of the rules of the two districts in requiring testing of teachers, teachers' aids, and clerical workers. Plaintiffs include workers in each category as well as the United Teachers of New Orleans and the Jefferson Federation of Teachers. Some of the plaintiffs have been

4

tested and seek money damages.  We have jurisdiction, there is standing, and they are not challenged.

The usual standards for grant of a preliminary injunction are applicable.  The only element at issue is the likelihood of success on the merits.  The district court found that there was no such likelihood of success, and we turn directly to that issue.

II

Several relevant principles are settled.  When a state orders the collection and testing of urine, it conducts a search. Ordinarily there must be "individualized suspicion of wrongdoing" to meet the Fourth Amendment's prohibition of unreasonable searches.  Chandler v. Miller, 117 S. Ct. 1295 (1997). There are exceptions based on "special needs, beyond the normal need for law enforcement."  Skinner v. Railway Labor Executives' Ass'n, 109 S. Ct. 1402, 1414 (1989)

The two school boards require testing of all employees injured in the course of employment without regard to the circumstances, even without any suggestion that a triggering injury was caused by any misstep of the employee to be tested.  Our question is whether the school boards can fit their testing rules within a special needs exception.

III

The Supreme Court recently instructed that "[w]hen such special needs -- concerns other than crime detection -- are alleged

5

in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties." Chandler, 117 S. Ct. at 1301. Directly to the point, "[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." Id. at 1295 (quoting Skinner, 109 S. Ct. at 1417).

The interest of the state asserted here to justify its drug testing is as well defined by what it is not as well as what it is. We agree that evidence of drug use on the job by teachers could identify a strong state interest. Teachers are entrusted with this nation's most precious asset -- its children. We need not lower the privacy expectations of teachers to that of students to observe that the role model function of teachers, coaches, and others to whom we give this responsibility adds heavy weight to the state interest side of the ledger in justifying random testing without individualized suspicion. How that balance on a given record might be struck is not before us. Despite hints of the school boards, the testing here does not respond to any identified problem of drug use by teachers or their teachers' aids or clerical workers. The school district offered evidence that during the seven months these tests were in place, four teachers or substitute teachers tested positive for drugs. This datum, while troubling, is in this

6

undeveloped form an uncertain base for extrapolating drug use. If any of these three classes of workers were the object of concern, workers chosen for testing are simultaneously underinclusive and overinclusive, remarkably so. The bite is underinclusive because only persons injured in the course of employment are to be tested. It is overinclusive because all persons injured are tested, not just persons injured under circumstances suggesting their fault. Stated another way, there is an insufficient nexus between suffering an injury at work and drug impairment. The school boards have not shown that their rules are responsive to an identified problem in drug use by teachers, teachers' aids, or clerical workers. Regardless, their general interest in a drug-free school environment is not served by these rules.

That the triggering event for testing is any injury-producing incident is no quirk or inept rulemaking. To the contrary, the rules appear to do precisely what they were intended to do: support the state's generalized interest in not paying compensation claims of employees whose injury was caused by drug use. Under the Louisiana workers' compensation scheme intoxication is a defense to a claim. A claimant refusing "drug and alcohol testing" faces a presumption that must be overcome to be awarded benefits. La. Rev. Stat. § 49:1015. The statute does not insist upon the testing of urine. Rather, the parish boards do so and reinforce the shifting of burdens by suspending any teacher who does not submit to testing.

7

IV

The two parish school boards have offered no legal justification for insisting upon drug testing urine without a showing of individualized suspicion of wrongdoing in a given case, certainly nothing beyond the ordinary needs of law enforcement. Special needs are just that, special, an exception to the command of the Fourth Amendment. It cannot be the case that a state's preference for means of detection is enough to waive off the protections of privacy afforded by insisting upon individualized suspicion. It is true that the principles we apply are not absolute in their restraint of government, but it is equally true that they do not kneel to the convenience of government, or allow their teaching to be so lightly slipped past. Surely then it is self-evident that we cannot rest upon the rhetoric of the drug wars. As destructive as drugs are and as precious are the charges of our teachers, special needs must rest on demonstrated realities. Failure to do so leaves the effort to justify this testing as responsive to drugs in public schools as a "kind of immolation of privacy and human dignity in symbolic opposition to drug use," that troubled Justice Scalia in <u>Von Raab</u>. <u>National Treasury Employees Union v. Von Raab</u>, 109 S.Ct. 1384, 1399 (1989) (Scalia, J., dissenting).

V

The rules attaching adverse consequences to refusals to consent to such searches cannot stand. The district court abused

8

its discretion in refusing a preliminary injunction.  We reverse and remand with instructions that defendants are to be enjoined from requiring teachers, teachers' aids, and clerical workers to submit urine specimens for testing in post-injury screening, absent adequate individualized suspicion of wrongful drug use.  This injunction will not cover testing of blood or breath.

REVERSED and REMANDED with instructions.


EDITH H. JONES, special concurrence:

I concur in all but Part IV of Judge Higginbotham's excellent opinion and emphasize that it deals only with the constitutionality of the schools' policies of testing teachers post-injury on the specific facts presented before us.