Hollister GARDNER, and Dan and Jo Beth Gardner, Guardians ad litem for Molly Gardner and Colby Gardner, Plaintiffs,

v.

TULIA INDEPENDENT SCHOOL DISTRICT, et al., Defendants.

No. CIV.A.2:97–CV–020–J, 2:97–CV–041–J.

United States District Court,
N.D. Texas,
Amarillo Division.

Dec. 7, 2000.

Hollister Gardner, Tulia, TX, pro se.

Peter Hofer, Attorney at Law, James C. Harrington, Attorney at Law, Ted A. Ross, Attorney at Law, Texas Civil Rights Project, Austin, TX, for plaintiffs.

Jeffrey L. Rogers, Attorney at Law, Richard Alan Morris, Attorney at Law, Feldman & Rogers, Houston, TX, for defendants.

## AMENDED OPINION

MARY LOU ROBINSON, District Judge.

In these two consolidated cases, Plaintiffs challenge a Tulia Independent School District (Tulia I.S.D.) policy which mandates random suspicionless drug testing of all students in grades 7–12 who engage in any extracurricular activities. The policy covers approximately 80% of the student body.

The first case was brought by *pro se* Plaintiff Hollister Gardner. Hollister Gardner has graduated from Tulia High School since filing his lawsuit. Therefore, certain of his claims for injunctive relief are moot. However, he alleges among other things that he was retaliated against for filing suit against the Defendants by the discriminatory application of rules regarding absences, by refusal to excuse certain absences which he contends were occasioned by the lawsuit, by giving him zeros for classes missed, and by not permitting him to make up the work.

In the second case, Plaintiffs Joe Dan and Jo Beth Gardner seek injunctive and declaratory relief on behalf of their daughter, Molly Gardner, and their son, Colby Gardner.[1]

In 1991, the Fifth Circuit affirmed *Brooks v. East Chambers Consolidated Independent School District*, 730 F.Supp. 759 (S.D.Tex.1989), *affirmed*, 930 F.2d 915 (5th Cir.1991). That case held that mandatory random suspicionless urinalysis of students in grades 7–12 who participated in extracurricular activities violates the Fourth Amendment. The facts in *Brooks* are substantially the same as those in the case before this Court. *Brooks* is the law of the Circuit and dispositive of the main question in this case unless it has been overruled by the United States Supreme Court or subsequent Fifth Circuit authority.

Defendants contend that *Brooks* has been overruled by *Vernonia School District 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) and by the subsequent Fifth Circuit opinion in *Aubrey v. School Board of Lafayette Parish*, 148 F.3d 559 (5th Cir.1998).

In *Vernonia*, the Supreme Court upheld random suspicionless drug testing of student athletes in a situation where the school was in crisis. A large part of the student body was in rebellion and athletes were leaders of the drug culture. The decision was based in part on the increased risk of sports-related injuries.[2]

---

1. Hollister Gardner is the son of Gary Gardner, who was the only member of the Tulia School Board who did not vote for adoption of the random drug testing policy. Gary Gardner and Dan Gardner are brothers. Colby was added as a plaintiff at trial by agreement of the parties, so as to prevent the issues from becoming moot on Molly's graduation. Colby is younger than his sister Molly. Jo Beth Gardner died on October 6, 1999.

2. The situation over many years in the Vernonia schools was:

There is no contention that the situation in Tulia I.S.D. in any way resembles that in *Vernonia.*

This Court finds the following facts:

Superintendent Vinyard informed the school board in July of 1996 that the United States Supreme Court had ruled in *Vernonia* that school districts could now drug test students who participated in high school athletics. Vinyard gave the school board members a handout from a company which was trying to sell the district on the idea of drug testing its students. The company was soliciting the school district's drug testing business.

Several months later, the Tulia Independent School District adopted a random suspicionless drug testing program applicable to all students in grades 7–12, inclusive, who participated in any extracurricular activity or program.

Before the policy was adopted, no major or widespread drug problem existed within any segment of the Tulia student body. There had been no increase in drug-related violence or disciplinary referrals, no increased use of drugs on school property, no increase in student suspensions, and no rising tide of rebellion or drug use within the student body. The Tulia junior high and high schools did not have a widespread or above-average problem with drug usage by students, much less use of any drug that is tested for under its policy.

There is no evidence that any extracurricular students, including those participating in athletics, have ever created any drug-related disciplinary problem while a

[T]eachers and administrators observed a sharp increase in drug use. Students began to speak out about their attraction to the drug culture, and to boast that there was nothing the school could do about it. Along with more drugs came more disciplinary problems. Between 1988 and 1989 the number of disciplinary referrals in Vernonia schools rose to more than twice the number reported in the early 1980's, and several students were suspended. Students became increasingly rude during class; outbursts of profane language became common.

Not only were student athletes included among the drug users but, as the District Court found, athletes were the leaders of the drug culture. 796 F.Supp. 1354, 1357 (D.Ore.1992). This caused the District's administrators particular concern, since drug use increases the risk of sports-related injury. Expert testimony at the trial confirmed the deleterious effects of drugs on motivation, memory, judgment, reaction, coordination, and performance. The high school football and wrestling coach witnessed a severe sternum injury suffered by a wrestler, and various omissions of safety procedures and misexecutions by football players, all attributable in his belief to the effects of drug use.

Initially, the District responded to the drug problem by offering special classes, speakers, and presentations designed to deter drug use. It even brought in a specially trained dog to detect drugs, but the drug problem persisted. According to the District Court:

"[T]he administration was at its wits end and ... a large segment of the student body, particularly those involved in interscholastic athletics, was in a state of rebellion. Disciplinary problems had reached 'epidemic proportions.' The coincidence of an almost three-fold increase in classroom disruptions and disciplinary reports along with the staff's direct observations of students using drugs or glamorizing drug and alcohol use led the administration to the inescapable conclusion that the rebellion was being fueled by alcohol and drug abuse as well as the student's misperceptions about the drug culture." *Ibid.*

At that point, District officials began considering a drug-testing program. They held a parent "input night" to discuss the proposed Student Athlete Drug Policy (Policy), and the parents in attendance gave their unanimous approval. The school board approved the Policy for implementation in the fall of 1989. Its expressed purpose is to prevent student athletes from using drugs, to protect their health and safety, and to provide drug users with assistance programs. *Vernonia School District 47J v. Acton, infra,* 515 U.S. at 648–50, 115 S.Ct. at 2388–89.

student at Tulia I.S.D.. [3] School officials arranged for repeated drug searches of student lockers and student cars over at least a seven year period. After as many as 30 searches by three different drug sniffing dogs, no evidence of any drugs on school property was found.

The testing policy covers all band, sports, cheerleading, University Interscholastic League (UIL) programs, activities and competitions, and other athletic and non-athletic school activities such as the Future Farmers of America, Future Teachers of America, National Honor Society, and Junior Engineering Technical Society. Because of widespread participation in curriculum enhancement courses, programs and activities within the Tulia student body, the drug-testing policy at issue covers approximately 80% of the secondary students enrolled in the Tulia I.S.D. The school board initially considered adoption of a policy that would require suspicionless testing of students participating only in athletics, but rejected that limitation in favor of a policy that would test a larger percentage of its student body. The drug testing policy adopted does not test for alcohol, tobacco, or inhalants.

It is not disputed that the Tulia Independent School District has an above-average "driving under the influence" of alcohol percentage.

Defendants concede that there is no similarity between the facts in *Vernonia* and the facts in the Tulia Independent School District. They contend, however, that the extent of a drug problem is immaterial—that the school's responsibility as guardian

and tutor, the students' diminished expectation of privacy, and an important governmental interest in deterring drug use are sufficient to make random suspicionless drug testing by urinalysis a reasonable search under the Fourth Amendment without a fact specific analysis. The Court in *Vernonia,* however, specifically references the fact findings of the trial court in the following language:

> ...; so also when the government acts as guardian and tutor the relevant question is whether the search is one that a reasonable guardian and tutor might undertake. *Given the findings of need made by the District Court, we conclude that in the present case it is.*

*Vernonia,* 515 U.S. at 665, 115 S.Ct. 2386 (emphasis added).

The argument that *Vernonia* changed the legal landscape by making it acceptable to drug test all students participating in extracurricular school activities was accepted by some courts. In *Todd v. Rush County Schools,* 983 F.Supp. 799 (S.D.Ind. 1997) (upholding constitutionality of random drug testing of non-athlete students in Rushville, Rush County, Indiana because "[i]n the final analysis, the reasoning of *Vernonia* seems to hold true for any student who is a member of an extracurricular activity."), *affirmed,* 133 F.3d 984 (7th Cir.1998)(holding that under *Vernonia* and *Schaill v. Tippecanoe County School Corp.,* 864 F.2d 1309 (7th Cir.1988) the random urinalysis requirements for all students who participate in interscholastic activities is consistent with the Fourth Amendment), *petition for rehearing en banc denied,* 139 F.3d 571 (over four

---

**3.** The school district does not record disciplinary referral data in a manner that permits determination of the number of extracurricular students versus non-extracurricular students who were referred for disciplinary action. There is no evidence that any students participating in extracurricular activities have

been referred for drug-related disciplinary action.

Any drug problems existing within the Tulia I.S.D. between 1996 and 1999 were fewer than drug problems which existed in Tulia during the 1960's.

Judge dissent), *cert. denied,* 525 U.S. 824, 119 S.Ct. 68, 142 L.Ed.2d 53 (1998).

Four judges declined to accept that analysis and stated in a dissent, citing *Chandler v. Miller:*

> Because the panel decision gives a very broad reading to the Supreme Court's holding in *Vernonia School District 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), and seemingly fails to take fully into account the Supreme Court's holding in *Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997), further review is warranted if we are to avoid sanctioning, by implication, the use of a urine sample as the price of admission to the public schools in this circuit.

In *Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997), the Supreme Court held that a Georgia Statute requiring candidates to pass a drug test to qualify for state office violated the Fourth Amendment. The Court stated that when "special needs" are alleged, Courts must undertake a context specific inquiry examining closely the competing private and public interest advanced by the parties. The Court discussed *Vernonia* as sustaining a random drug testing program for high school students engaged in interscholastic athletic competitions. After noting the public school system's responsibilities as guardian and tutor, the Court described the situation in *Vernonia:*

> An "immediate crisis," ... caused by "a sharp increase in drug use" in the school district, ... sparked installation of the program. District Court findings established that student athletes were not only "among the drug users," they were "leaders of the drug culture."

*Chandler,* 117 S.Ct. at 1302 (citations omitted).

This Court concludes that the holding in *Vernonia* was limited to random drug test-ing of the student athletes. Justice Ginsberg stated as much in her concurring opinion. The question of the constitutionality of broad-based, random, suspicionless drug testing programs was reserved for another case.

Defendants, however, contend that the Fifth Circuit decision in *Aubrey v. School Board of Lafayette Parish* requires a different conclusion. In *Aubrey,* the Court upheld the random drug testing of a school custodian who was to handle potentially dangerous machinery and hazardous substances in an environment including a large number of children ranging in age from 3 to 11. The Court did not require evidence of a drug problem in upholding the drug testing program.

Defendants argue that the fact that the policy was undertaken in furtherance of the government's responsibility under a public school system as guardian and tutor of children entrusted to its care was sufficient without further analysis to justify the constitutionality of the program.

Contrary to the Defendants' argument, *Aubrey* was based on the safety sensitive nature of the custodian's duties. Indeed, the Court had reversed a summary judgment for the School Board and remanded to the trial court, noting a need for additional evidence including how particular positions were selected and designated as safety sensitive. *See Aubrey v. School Board of Lafayette Parish,* 92 F.3d 316, 318 (5th Cir.1996). Further, the Court cited its earlier opinion, *United Teachers of New Orleans v. Orleans Parish School Board,* 142 F.3d 853 (5th Cir.1998), in which it held that school board policies requiring all employees to submit to a drug abuse and alcohol screening panel following an accident occurring during the scope of their employment were violative of the Fourth Amendment.

■ This Court concludes that the mandatory random, suspicionless drug testing program for all students participating in extracurricular activities at Tulia I.S.D. is violative of the Fourth Amendment to the United States Constitution and that Molly and Colby Gardner, proceeding by their guardian *ad litem,* are entitled to declaratory and injunctive relief.

■ Hollister Gardner's action for injunctive relief to prevent enforcement of the program as to him is moot. He has graduated from Tulia High School and is attending college. He, however, asserts certain remaining causes of action. Because he is proceeding *pro se,* his pleadings will be liberally construed. He has, however, the burden to prove his allegations by evidence.

■ Hollister Gardner alleges that the principal, with the permission of the school board, refused to excuse absences in retaliation for his suit against the board and that the principal and the board thereby treated him differently than he otherwise would have been treated. The evidence shows that he missed two whole days and certain classes on three other days, that the absences were not excused, and he was not permitted to make up the work and thus received zeros causing his overall grades to be lowered from his usual high grades. The evidence, however, does not show that the absences were in fact necessary for the prosecution of the lawsuit. Two full days absences were incurred to come to Amarillo to personally file the lawsuit, to make copies of pleadings and to personally serve the Defendants. Some portion of the remaining missed class time was incurred because Hollister attended school board meetings where he thought that matters relevant to his lawsuit might be discussed. The record does not show the agenda of the meetings or what was in fact discussed. There is no evidence that any of the unexcused absences related to depositions scheduled by the Defendants or that any of the absences were caused by court hearings. It is undisputed that Hollister did not attempt to make arrangements in advance to have excused absences. In short, there is no evidence that Hollister was required to miss the school work in question in order to file or prosecute the case. The testimony is not sufficient for the Court to find that the principal or the school board abused their discretion or that Hollister's treatment was different from that of students whose absences were not incurred because they were pursuing a suit against the school board. His request that the Court order that his grades on his permanent record be raised is denied.

Hollister Gardner also asked that any reference in the record to the fact that he was suspended from extracurricular activities for about two weeks before he was reinstated be removed from his permanent record. The record before the Court is devoid of any evidence that there is any permanent record reflecting his removal from any office or extracurricular activity or that any such record has been transmitted to any other person or entity. His request for injunctive relief in that respect is denied.

Hollister Gardner also seeks to allege a cause of action for violation of the Texas Open Meetings Act by the school board. It is not necessary for this Court to address the question of whether there is a private cause of action for damages under the Texas Open Meetings Act because the Court finds that there is no evidence that the board violated the Act.

■ Finally, the Court finds that each of the school board members acted in good faith and did not act from corrupt motives in adopting the drug testing program.

They are therefore entitled to qualified immunity from individual liability on all state-law based claims for money damages. *See Campbell v. Jones*, 153 Tex. 101, 264 S.W.2d 425 (1954)(held that since trustees acted in good faith, honestly believing that teacher had not met conditions of job when fired, trustees were not personally liable in damages for breach of contract); *Font v. Carr*, 867 S.W.2d 873, 878–79 (Tex.App.— Houston [1st Dist.] 1993, *writ dismissed w.o.j.*)(Texas law contains a subjective element whereas federal law is purely objective).

This Court has already entered summary judgment that Defendants are entitled to qualified immunity for money damages on federal claims.

Judgment will be entered accordingly.

It is SO ORDERED.