NATIONAL HOME INSURANCE COMPANY
(A RISK RETENTION GROUP)

V.

COMMONWEALTH OF VIRGINIA, AT THE RELATION OF
THE STATE CORPORATION COMMISSION

Record No. 931052

June 10, 1994

Present: All the Justices

*Harvey B. Cohen (R. Scott Caulkins; John C. Pasierb; Cohen, Gettings, Dunhah & Harrison,* on briefs), for appellant.

*Michael D. Thomas (Stewart E. Farrar; Anthony Gambardella; Peter B. Smith,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The primary issue that we consider in this appeal is whether the State Corporation Commission is a court of competent jurisdiction within the meaning of the Federal Liability Risk Retention Act of 1986, 15 U.S.C. §§ 3901 through 3906.

## I.

National Home Insurance Company (NHIC) is a risk retention group created in accordance with the Product Liability Risk Retention Act of 1981 that was amended by the Liability Risk Retention Act of 1986 (The Act). A risk retention group is a legal entity organized for the primary purpose of spreading the risk of liability exposure among its members. *See* 15 U.S.C. § 3901(a)(4)(A) through (C).

NHIC is chartered and licensed by the State of Colorado and issues liability insurance coverage to residential home builders. NHIC conducts business in 48 states and the District of Columbia.

The builders are required to be members of the Home Buyers Warranty Program that is administered in Virginia by the Home Buyers Warranty Corporation II. NHIC is one of several companies that belong to the "family" of Home Buyers Warranty corporations. These corporations provide administrative, management,

marketing, underwriting, and warranty services related to the insurance sold to residential builders.

NHIC insures its builder members against claims made by homeowners for losses caused by defects in construction and workmanship in homes constructed by builder members. The builder members are the insured parties under the warranties and the individual home owners are the beneficiaries.

In preparing NHIC's audited financial statements for the year-end 1991, Coopers & Lybrand, an accounting firm, discovered that NHIC had failed to collect sufficient premiums from the policies it had sold to pay for claims made. Accordingly, Coopers & Lybrand's staff found, and two other accounting firms retained later by NHIC confirmed, that NHIC's deficit in unearned premium reserves constituted a liability of $9,626,381. This additional liability reduced NHIC's policyholder surplus to a negative $16,918,955 as of December 31, 1991. NHIC is required to maintain a positive surplus of at least $1,050,000 in accordance with Colorado's minimum surplus requirement.

Coopers & Lybrand stated, in its 1991 audit report submitted to NHIC's board of directors, that there is "substantial doubt about [NHIC's] ability to continue as a going concern" because of the large premium deficiency. NHIC reported the deficit in unearned premium reserves to the Colorado Division of Insurance, and it made a determination of delinquency and entered an order of direct supervision against NHIC.

The Colorado Division of Insurance entered an order of summary suspension, finding that NHIC was operating in "an impaired and/or insolvent financial condition," which was "a result of [NHIC's] deliberate and willful failure to comply with Colorado law." Subsequently, the Colorado Division of Insurance issued an order requiring that NHIC immediately cease and desist from the further transaction of the business of insurance unless it complied with certain conditions designed to restore NHIC's surplus over a period of time. This order permits NHIC to continue issuing new insurance contracts to builder members even though it is "financially impaired and/or insolvent."

In March 1993, the Virginia Bureau of Insurance received NHIC's 1992 annual statement that reflected the negative surplus. Shortly thereafter, the Bureau of Insurance filed pleadings with the Clerk of the State Corporation Commission, requesting that the Commission enjoin NHIC from issuing any new certifi-

cates or other evidences of insurance coverage until NHIC restored its surplus to the minimum amount required by Colorado. NHIC filed responsive pleadings in which it, among other things, denied that it was in a hazardous financial condition.

The Bureau of Insurance and NHIC filed numerous memoranda of law. The Commission conducted an evidentiary hearing and considered memoranda of law and argument of counsel. The Commission enjoined NHIC from issuing, with certain exceptions, any new policies of insurance or other coverages in Virginia until NHIC restores its surplus to the minimum monetary amount required by Colorado law. NHIC appeals the final order of the Commission to this Court. Va. Const. art. IX, § 4; Code § 12.1-39.

## II.

NHIC asserts that the Liability Risk Retention Act preempts Virginia's power to regulate retention groups, and that the Commission's actions are not authorized by the narrow exceptions contained in the Act. The Commission asserts that the Act does not completely preempt state authority and that its actions were authorized.

■ Section 3902(a) of the Act exempts risk retention groups from certain state laws, rules, regulations, or orders. However, this exemption does not completely divest a state of power to regulate the activities of risk retention groups. Sections 3902(a)(1)(A) through (H) create numerous exceptions to the general exemption contained in § 3902(a). For example, states are permitted to require risk retention groups to: comply with the requirements of the unfair claim settlement practices law of the state, 15 U.S.C. § 3902 (a)(1)(A); pay, on a nondiscriminatory basis, premium and other taxes levied on admitted insurers and surplus lines insurers, brokers, or policy holders, 15 U.S.C. § 3902(a)(1)(B); participate, on a nondiscriminatory basis, in mechanisms established or authorized under state law for the equitable apportionment among insurers of liability insurance losses and expenses incurred on policies written through such mechanisms, 15 U.S.C. § 3902(a)(1)(C); and register with and designate the state insurance commissioner as its agent for the purpose of receiving service of legal documents or process, 15 U.S.C. § 3902(a)(1)(D).

■ Specifically, § 3902(a) of the Act, which governs our resolution of this appeal, states in relevant part:

Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would —

(1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group exept [sic] that the jurisdiction in which it is chartered may regulate the formation and operation of such a group and any State may require such a group to —

. . . .

(E) submit to an examination by the State insurance commissioners in any State in which the group is doing business to determine the group's financial condition, if —

(i) the commissioner of the jurisdiction in which the group is chartered has not begun or has refused to initiate an examination of the group; and

(ii) any such examination shall be coordinated to avoid unjustified duplication and unjustified repetition;

(F) comply with a lawful order issued —

(i) in a delinquency proceeding commenced by the State insurance commissioner if there has been a finding of financial impairment under subparagraph (E); or

(ii) in a voluntary dissolution proceeding;

(G) comply with any State law regarding deceptive, false, or fraudulent acts or practices, except that if the State seeks an injunction regarding the conduct described in this subparagraph, such injunction must be obtained from a court of competent jurisdiction;

(H) comply with an injunction issued by a court of competent jurisdiction, upon a petition by the State insurance commissioner alleging that the

group is in hazardous financial condition or is financially impaired.

Additionally, § 3902(d) specifically requires that risk retention groups submit certain information to state insurance commissioners:

Each risk retention group shall submit—

. . . .

(2) to the insurance commissioner of each State in which it intends to do business, before it may offer insurance in such State—

(A) a copy of such plan or study (which shall include the name of the State in which it is chartered and its principal place of business); and

(B) a copy of any revisions to such plan or study, as provided in paragraph (1)(B) (which shall include any change in the designation of the State in which it is chartered); and

(3) to the insurance commissioner of each State in which it is doing business, a copy of the group's annual financial statement submitted to the State in which the group is chartered as an insurance company, which statement shall be certified by an independent public accountant and contain a statement of opinion on loss and loss adjustment expense reserves made by—

(A) a member of the American Academy of Actuaries, or

(B) a qualified loss reserve specialist.

Section 3902(f)(1) states:

Subject to the provisions of subsection (a)(1)(G) of this section (relating to injunctions) and paragraph (2), nothing in this chapter shall be construed to affect the authority of any State to make use of any of its powers to enforce the

laws of such State with respect to which a risk retention group is not exempt under this chapter.

Thus, these provisions in § 3902 of the Act clearly indicate that Congress intended to reserve to the states an important role in the regulation of the financial activities of risk retention groups.

## III.

NHIC argues that the Commission is not empowered to "conduct its own examination to determine [NHIC's] financial condition," except under limited circumstances that are not present here. The Commission, however, asserts that it did not conduct an "examination" within the meaning of the Act when it reviewed financial data that NHIC had filed with the Colorado Division of Insurance and other publicly available information. We agree with the Commission.

Even though § 3902(a)(1)(E) explicitly prohibits non-domiciliary states, like Virginia, from initiating a financial "examination" of risk retention groups unless the commissioner of the jurisdiction in which the group is chartered has declined to do so, we find no language in the Act which precludes Virginia's Commissioner of Insurance from reviewing information obtained as a result of the chartering state's financial examination. Here, Virginia's Commissioner of Insurance did not conduct a financial examination of NHIC. Rather, he merely reviewed the financial data that NHIC was required by the Act to submit to him, 15 U.S.C. § 3902(d), as well as financial data obtained from the Colorado Division of Insurance. Thus, we find no merit in NHIC's argument.

## IV.

NHIC argues that the Commission's injunction order is invalid because "the Commission is not a 'court of competent jurisdiction' under the Risk Retention Act." NHIC, relying upon legislative history, argues that the phrase "court of competent jurisdiction" means an "independent judicial officer" and "[a]s the Commission is charged with executing insurance laws, it is not independent from the Commissioner of Insurance." The Commission, also relying upon legislative history, argues that it is a court of competent jurisdiction, and it acted in a judicial capacity when it granted the injunction that is challenged here.

■ The Act does not define the phrase "court of competent jurisdiction." We believe that in the context of the Act, the phrase is ambiguous and, therefore, consistent with established federal law, we must consider the legislative history to ascertain whether Congress intended that the phrase include a tribunal such as the Commission. *Jackson Transit Auth.* v. *Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15, 23-24 (1982).

The term, "court of competent jurisdiction," first appears in the legislative history leading to the enactment of the 1986 Amendments to the Act, with the introduction of Senate Bill 2129. When the Senate Committee on Commerce, Science and Transportation reported on Bill 2129, the minority of the Committee stated that "[s]tate regulatory protection should also include the ability of a State insurance commissioner to proceed with an injunction in a court of competent jurisdiction should a hazardous financial condition or a financially impaired condition be found in a risk retention group." S. Rep. No. 294, 99th Cong., 2d Sess. 28 (1986).

When the Bill was considered by the entire Senate, an agreed amendment, number 2209, was appended to Senate Bill 2129. 132 Cong. Rec. 16,779 (1986). This revision marked the first appearance of subsection (H) of 15 U.S.C. § 3902(a)(1), the subsection at issue in this case. 132 Cong. Rec. 16,775. Also appearing for the first time was a provision limiting what is now 15 U.S.C. § 3902(e)(2). The proposed limitations stated:

Sec. 7.(a) For purposes of enforcing this Act, if the insurance commissioner of any State has reason to believe that a risk retention group or purchasing group has engaged or is engaging in conduct subject to State law under this Act or in conduct in violation of this Act in that State, the commissioner may make use of any of the powers permitted under the laws of such State regarding insurers admitted to do business in that State, except that if a commissioner seeks an injunction against a risk retention group or purchasing group because of conduct in violation of section 3(d) or section 4(d) of this Act, the commissioner shall obtain an order for scuh [sic] injunction from a Federal or State *court of competent jurisdiction.*

132 Cong. Rec. 16,776 (emphasis added).

The purpose of these amendments was stated as follows:

[These] amendments are intended to clarify S. 2129 with respect to the authority of state insurance commissioners to oversee the operation of risk retention groups and purchasing groups established under the Risk Retention Act.

*Id.*

More importantly, it was further explained that:

This will assure that any decision to prohibit a group from operating because of a violation of the Risk Retention Act will be made by an *independent judicial officer*. It is intended that court orders enjoining this conduct (including penalties for contempt for breach of an order) will be the sole remedy for any conduct described in section 3(d) or 4(d).

*Id.* at 16,777 (emphasis added).

A similar bill in the House of Representatives was tabled in favor of Senate Bill 2129, *id.* at 25,399, and, on October 6, 1986, the final version of Senate Bill 2129 was submitted to the Senate for final approval. Before the Bill's enactment, the Bill's sponsor explained to the Senate:

[B]oth the Senate and the House bill provide that if a State insurance commissioner seeks to enjoin a group because of conduct constituting deceptive, false, or fraudulent acts or practices, any such injunction must be obtained from a court of competent jurisdiction. This will assure that any such decision to prohibit a group from operating will be made by an *independent judicial officer*.

*Id.* at 29,090 (emphasis added).

The interpretation of a statute by its sponsor is an authoritative guide to its construction. *Rice v. Rehner*, 463 U.S. 713, 728 (1983); *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 526-27 (1982). As this legislative history makes clear, Congress intended that a "court of competent jurisdiction" be "an independent judicial officer."

The Commission is empowered to regulate insurance in Virginia, Code § 38.2-200, and pursuant to Code § 12.1-16, the Commission delegates certain duties and responsibilities to the Commissioner of Insurance, who is also an employee of the Com-

mission and serves at its pleasure. Here, the Bureau of Insurance, a division of the Commission, sought the injunction. The hearing was conducted by the Commission, and its counsel participated. Moreover, the Commission is a party in this appeal urging an affirmance of its actions and rulings.

In contrast to the constitutional and statutory framework in which proceedings under state law are conducted and decided, we believe that, in drafting the Act, Congress intended that there be an institutional separation between the state insurance commissioner and the decisional body considering the insurance commissioner's request for an injunction. Thus, we hold, that for purposes of the Act only, the Commission, as a regulatory tribunal, is neither an "independent judicial officer" nor a court of competent jurisdiction as contemplated by Congress.

## V.

Accordingly, we will reverse the order appealed from, vacate the injunction, and dismiss the proceeding with leave to the Bureau of Insurance to request the issuance of an injunction in a court of competent jurisdiction if it be so advised.

*Reversed and dismissed.*

JUSTICE LACY, with whom CHIEF JUSTICE CARRICO and JUSTICE WHITING join, concurring in part and dissenting in part.

I concur with the majority in all respects except in the conclusion reached in Part IV of the opinion.

Prior to this appeal, National Home Insurance Company (NHIC) sought a temporary restraining order and preliminary injunction from the United States District Court for the Eastern District of Virginia to prevent the State Corporation Commission from enforcing its July 2, 1993 order enjoining NHIC from conducting any new or additional business in Virginia. NHIC asserted the same position it raises before this Court—that the Commission's order was invalid because the Commission is not a "court of competent jurisdiction" under § 3902(a)(1)(G) of the Product Liability Risk Retention Act of 1986, 15 U.S.C. §§ 3901 through 3906 (the Act). *National Home Ins. Co. v. State Corporation Commission*, 838 F.Supp. 1104 (E.D. Va. 1993).

In rejecting NHIC's position, the District Court found that the phrase "court of competent jurisdiction" "normally refers to courts having subject matter jurisdiction." *Id.* at 1114. And, because the Act does not define the phrase, "it seems apparent that Congress expected this determination to be made by reference to state law, for it is state law that typically defines a 'state court of competent jurisdiction.' " *Id.* Relying on the Virginia Constitution and statutes, and opinions of this Court, as well as opinions of other federal courts, the District Court noted that the Commission "may function as a court[,] . . . . is vested with judicial powers and duties[,] . . . . has a stature and dignity equal to that of a circuit court[,] . . . . has the power to issue temporary and permanent injunctions, . . . . must afford all parties reasonable notice of proceedings, an opportunity to be heard, and the opportunity to present evidence[,]" and concluded that "[u]nquestionably, then, the SCC may function as a 'court of competent jurisdiction' within the meaning of the Act." *Id.* at 1114-15.

The District Court also rejected NHIC's argument that the Act requires the "court of competent jurisdiction" to be independent of the state body responsible for insurance regulation, not only because there was no ambiguity in the phrase, but also because the terms of the Act do not contain such a requirement and there is no "compelling or persuasive reason to read this extra requirement into the Act's text." *Id.* at 1115 n.26.

Having failed to persuade the federal court, NHIC came to this Court repeating its arguments. Although the majority does not address the federal court decision, I believe the District Court construed the federal statute correctly, and, like the federal court, would reject NHIC's position.

The first matter for consideration is whether the language in the statute is ambiguous. It is a well-settled principle that legislatures use words or expressions in their commonly understood meaning, unless a contrary intent is expressed. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982). Like the District Court, I do not find the phrase "court of competent jurisdiction" contained in the Act to be ambiguous. This phrase, while not defined by the Act, is a phrase used frequently in both state and federal legislation apparently without confusion. As noted by the District Court, the phrase is applied by looking to the state law to identify the judicial body given jurisdiction over the subject matter in issue. The majority here did just that and, despite their conclusion that

the phrase is ambiguous, had no trouble in determining that jurisdiction over this subject matter resides in the Commission. In addition, based on our prior cases, as well as the statutes and the Constitution of Virginia, there can be no dispute that the Commission can operate as a "court." The Commission, therefore qualifies as a "court of competent jurisdiction" under the usually understood sense of the phrase.

The body defined by state law as the court with competent jurisdiction is easily ascertainable in this case and no one disputes the Commission's subject matter jurisdiction. The majority for some reason, however, determines that the phrase in this statute is not clear and in fact means something different. I cannot subscribe to the view that Congress, in this Act, used the phrase "court of competent jurisdiction" in any unusual way or that Congress meant to usurp the authority of the states to prescribe subject matter jurisdiction for their tribunals.

Assuming for the moment that legislative history must be consulted to determine the meaning of a court of competent jurisdiction, I disagree with the majority's interpretation and application of that history. In my view, Congress sought to remove the ultimate decision-making authority regarding continued operation of a risk retention group from the state insurance commissioner and to place that authority in an entity with judicial powers. The reason for this specific provision is that in many jurisdictions, state law gives the insurance commissioner the authority to issue *ex parte* injunctions or cease and desist orders against insurance companies under certain circumstances.

The relevant legislative history supports this view. In 1986, Senator Kasten introduced Bill S. 2129 which amended the Act. When reported out of the Senate Committee, Bill S. 2129 specifically recognized the authority of any State to enjoin a "risk retention group that is in hazardous financial condition" from operating, or soliciting or selling insurance. (S. Rep. No. 294, 99th Cong., 2d Sess. 21-22 (1986)). Accordingly, where authorized by state law, the Bill continued to allow a state insurance commissioner to issue an *ex parte* injunction against a risk retention group that was in hazardous financial condition.

When the Bill S. 2129 reached the full Senate, an amendment in the nature of a substitute was offered. This substitute contained the language requiring that any injunction be obtained from a court of competent jurisdiction.

Sec. 7(a) For purposes of enforcing this Act, if the insurance commissioner of any State has reason to believe that a risk retention group or purchasing group has engaged in or is engaging in conduct subject to State law under this Act or in conduct in violation of this Act in that State, the *commissioner may make use of any of the powers permitted under the laws of such State* regarding insurers admitted to do business in that State, *except that if a commissioner seeks an injunction* against a risk retention group or purchasing group because of conduct in violation of section 3(d) or section 4(d) of this Act, the *commissioner shall obtain an order for such injunction from a Federal or State court of competent jurisdiction.*

132 Cong. Rec. 16,776 (emphasis added).

Analysis of the structure of this section is instructive. First, the section authorized state insurance commissioners to enforce the provisions of the Act by using "any of the powers permitted" under state law. But then a specific exception is made to this grant of enforcement power when "a commissioner seeks an injunction." At that point, the commissioner must go to a court of competent jurisdiction.

The written explanation for the substitute, inserted in the Congressional Record, apparently by the author of the substitute, stated that the substitute was "intended to clarify S. 2129 with respect to the authority of state insurance commissioners." *Id.* It is the independent authority of state insurance commissioners to issue cease and desist or injunction orders which the Congress sought to preclude. In Virginia, of course, the Insurance Commissioner has no authority to issue such an *ex parte* injunction, but must file a proceeding with the Commission. The majority's analysis of the legislative history fails to consider these significant circumstances in its interpretation of the legislative history. I do not believe and I cannot read the legislative history as evidencing an intent on the part of Congress to vitiate the Commonwealth's statutory scheme that vests subject matter jurisdiction in the Commission, a scheme that does not permit the activity Congress sought to curtail.

The majority's conclusion is based on its definition of "independent judicial officer" as a structural separation between the entity issuing the injunction and the insurance commissioner. This defi-

nition is not found in either instance the phrase appears in the legislative history. 132 Cong. Rec. 16,777; 29,090. The phrase was not addressed or discussed by the Bill's sponsor or in the Senate report.

In my opinion, neither the Act nor the legislative history supports the conclusion reached by the majority on this issue. Accordingly, I would affirm the decision of the Commission.