The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 11, 2021

## 2021COA32

**No. 19CA1913, Jerud Butler v. Board of County Commissioners for San Miguel County — Employment Practices — Unlawful Prohibition of Legal Activities as a Condition of Employment; Labor and Industry — Freedom of Legislative and Judicial Access Act**

A division of the court of appeals considers whether the Lawful Activities Statute — which prohibits an employer from "terminat[ing] the employment of any employee" due to the employee's lawful off-duty conduct — applies to an employee's demotion to another position with the same employer. *See* § 24-34-402.5(1), C.R.S. 2020. The division concludes that it does not.

The division also considers whether the Freedom of Legislative and Judicial Access Act (Access Act) — which prohibits an employer from taking any action against an employee for testifying before a committee of the General Assembly or a court or for speaking to a

member of the General Assembly at the committee's, court's, or member's request — applies to an employee's voluntary testimony as a witness in a court proceeding without a court order, subpoena, or other formal request by a judicial officer. *See* § 8-2.5-101(1)(a), C.R.S. 2020. The division concludes that the statute may apply when a party or a party's attorney calls an employee to testify as a witness in a court proceeding and a judge, magistrate, or other judicial officer allows the testimony.

Accordingly, the division affirms the trial court's dismissal of the plaintiff's Lawful Activities Statute claim, reverses the trial court's entry of summary judgment on the plaintiff's Access Act claim, and remands for further proceedings.

Court of Appeals No. 19CA1913
San Miguel County District Court No. 18CV30004
Honorable Kari A. Yoder, Judge

Jerud Butler,

Plaintiff-Appellant,

v.

Board of County Commissioners for San Miguel County, Colorado,

Defendant-Appellee.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GOMEZ
Terry and Dunn, JJ., concur

Announced March 11, 2021

---

Killian Davis Richter & Mayle, PC, Nicholas W. Mayle, Damon Davis, Benjamin
P. Meade, Joseph H. Azbell, Grand Junction, Colorado, for Plaintiff-Appellant

Williams, Turner & Holmes, P.C., Jeffrey L. Driscoll, Grand Junction, Colorado,
for Defendant-Appellee

¶ 1     This case presents two issues of first impression, both arising under statutory exceptions to the state's at-will employment doctrine. First, we determine that the Lawful Activities Statute — which prohibits an employer from "terminat[ing] the employment of any employee" due to the employee's lawful off-duty conduct — does not apply to an employee's demotion to another position with the same employer. *See* § 24-34-402.5(1), C.R.S. 2020. Second, we determine that the Freedom of Legislative and Judicial Access Act (Access Act) — which prohibits an employer from taking any action against an employee for testifying before a committee of the General Assembly or a court or for speaking to a member of the General Assembly at the committee's, court's, or member's request — may apply when a party or a party's attorney calls an employee to testify as a witness in a court proceeding and a judge, magistrate, or other judicial officer allows the testimony. *See* § 8-2.5-101(1)(a), C.R.S. 2020.

¶ 2     Accordingly, we affirm in part and reverse in part the trial court's entry of judgment in favor of defendant Board of County Commissioners for San Miguel County (the County) and against plaintiff Jerud Butler. Specifically, we affirm the dismissal of

1

Butler's claim under the Lawful Activities Statute, reverse the entry of summary judgment on his claim under the Access Act, and remand for further proceedings.

## I.    Background

¶ 3    Butler and his former brother-in-law, Jeremy Spor, worked in different districts within the County's Road and Bridge Department. As Spor and his wife (who is the sister of Butler's wife) became embroiled in contested divorce proceedings, Spor and Butler began having issues at work. Around that time, Butler was promoted to district supervisor, conditioned on successfully completing a one-year probationary period and not having any negative interactions with Spor at work.

¶ 4    Shortly after his promotion, Butler took approved time off from work to testify at a parenting time hearing between Spor and his wife. Butler was not issued a subpoena but came to court voluntarily at the request of his sister-in-law and her attorney. During the hearing, he testified about the unpredictable nature of on-call work with the Road and Bridge Department. He indicated, however, that he didn't have any supervisory authority over Spor, didn't set Spor's work schedule, and didn't know whether Spor had

any agreement with his supervisor about his schedule.[1]  After the hearing, the court in that case awarded Spor significantly less parenting time than he had sought.

¶ 5    Spor lodged a complaint at work.  The County conducted an investigation, after which it demoted Butler to his prior, nonmanagerial position at a lower rate of pay.  The County's stated basis for demoting Butler was that his decision to testify about Spor's work schedule (when he didn't supervise Spor and wasn't aware of Spor's scheduling arrangements with his supervisors) reflected poor managerial judgment and allowed his family dispute to disrupt the workplace.

¶ 6    Butler brought this case, asserting claims under the Lawful Activities Statute and the Access Act.[2]  The trial court dismissed

---

[1] There is no transcript from the parenting time hearing due to a failure of the court's recording equipment.  In the course of this case, Butler offered a summary of what he recalled from the hearing.  Because we construe all factual assertions in Butler's favor, we assume for purposes of this appeal that his summary is accurate.  We note, however, that the parties dispute the summary, including, in particular, whether Butler testified about Spor's work schedule specifically and whether he testified that Spor's schedule was not conducive to parenting young children.

[2] Before bringing this case, Butler filed a federal lawsuit asserting claims under the First Amendment and the Lawful Activities

Butler's Lawful Activities Statute claim on a motion to dismiss under C.R.C.P. 12(b)(5), concluding that the statute prohibits only termination of employees and doesn't apply to Butler's demotion. The court later granted the County's motion for summary judgment on Butler's Access Act claim, concluding that Butler's hearing testimony was not protected because it wasn't provided at the request of a court. Butler appeals both rulings.

## II. Discussion

### A. Standard of Review

¶ 7    We review de novo a trial court's dismissal of an action under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted. *Abu-Nantambu-El v. State*, 2018 COA 30, ¶ 8. We accept all factual allegations in the complaint as true and view those allegations in the light most favorable to the plaintiff. *Id.* To survive a motion to dismiss, a complaint must plead sufficient facts

---

Statute. A federal district court dismissed the First Amendment claim and declined to exercise supplemental jurisdiction over the Lawful Activities Statute claim, and the United States Court of Appeals for the Tenth Circuit affirmed. *See Butler v. Bd. of Cnty. Comm'rs*, 920 F.3d 651 (10th Cir. 2019).

that, if taken as true, suggest plausible grounds to support a claim for relief.  *Id.*; *see also Warne v. Hall*, 2016 CO 50, ¶¶ 9, 24.

¶ 8 Similarly, we review a trial court's grant of summary judgment de novo.  *Edwards v. Bank of Am., N.A.*, 2016 COA 121, ¶ 13.  We give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the evidence, and we construe all doubts as to the existence of any genuine issue of material fact in that party's favor.  *Id.* at ¶ 12.  Summary judgment is proper only if the pleadings and supporting documentation demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Id.* at ¶ 11; *see also* C.R.C.P. 56.

¶ 9 We also review a trial court's interpretation of a statute de novo.  *Lewis v. Taylor*, 2016 CO 48, ¶ 14.  In construing a statute, our primary purpose is to ascertain and effectuate the legislature's intent.  *McCoy v. People*, 2019 CO 44, ¶ 37.  To do so, we focus first on the language of the statute.  *Id.*  We give the statutory words and phrases their plain and ordinary meanings, read those words and phrases in context, and construe them according to the rules of grammar and common usage.  *Id.*  We also

endeavor to effectuate the purpose of the legislative scheme, reading that scheme as a whole, giving consistent effect to all of its parts, and avoiding constructions that would render any words or phrases superfluous or would lead to illogical or absurd results. *Id.* at ¶ 38.

¶ 10    If the statutory language is unambiguous, we apply its plain and ordinary meaning and look no further. *Carrera v. People*, 2019 CO 83, ¶ 18. But if the language is ambiguous, in that it is susceptible of multiple reasonable interpretations, we may consider other aids to statutory construction, such as the consequences of a given construction, the end to be achieved by the statute, and the statute's legislative history. *McCoy*, ¶ 38.

## B.    Lawful Activities Statute

¶ 11    The parties dispute whether the Lawful Activities Statute's prohibition on termination of employment due to an employee's lawful off-duty conduct extends to the demotion of an employee. We conclude that it does not.

¶ 12    Section 24-34-402.5, titled "[u]nlawful prohibition of legal activities as a condition of employment," provides that

> [i]t shall be a discriminatory or unfair employment practice for an employer to *terminate the employment of any employee* due

6

to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours unless such a restriction: (a) [r]elates to a bona fide occupational requirement or is reasonably and rationally related to the employment activities and responsibilities of a particular employee or a particular group of employees, rather than to all employees of the employer; or (b) [i]s necessary to avoid a conflict of interest with any responsibilities to the employer or the appearance of such a conflict of interest.

§ 24-34-402.5(1) (emphasis added). It also creates a private right of action for employees who are aggrieved by a violation of these provisions. § 24-34-402.5(2)(a).

¶ 13    We conclude, for five reasons, that the statute unambiguously prohibits only termination or discharge of an employee's employment and does not extend to demotion of an employee to another position with the same employer.

¶ 14    First, we look to the plain and ordinary meaning of the word "terminate." Where, as here, a statutory term is not defined in a statute, is a word in common usage, and is a word where people of ordinary intelligence needn't guess at its meaning, we may refer to dictionary definitions in determining its plain and ordinary meaning. *Mendoza v. Pioneer Gen. Ins. Co.*, 2014 COA 29, ¶ 24.

7

The dictionary definition of "terminate" is "to come to an end in time." Merriam-Webster Dictionary, https://perma.cc/23H7-XWH2. So, a literal reading of the statute is "to end the employment of any employee." This unambiguously refers to the end of the employment relationship — not just the cessation of a particular position.

¶ 15    Second, we glean no significance from the legislature's use of the word "terminate" in section 24-34-402.5, as opposed to the word "discharge" used in other employment statutes. *See, e.g.,* § 24-34-402(1)(a), C.R.S. 2020; *see also People v. Jompp*, 2018 COA 128, ¶ 68 ("Sometimes the legislature uses different language to achieve similar results."). Courts have used these two words interchangeably in interpreting the Lawful Activities Statute. *See, e.g., Coats v. Dish Network, LLC*, 2015 CO 44, ¶ 1 ("This statute generally makes it an unfair and discriminatory labor practice to *discharge* an employee based on the employee's 'lawful' outside-of-work activities.") (emphasis added); *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 375 (Colo. 1997) ("[A] jury instruction submitted pursuant to this statute would necessarily include an element providing that the employee was *discharged* because he or she

engaged in lawful activity away from the employer's premises during nonworking hours.") (emphasis added).[3]

¶ 16    Nothing in the language of the Lawful Activities Statute suggests the legislature intended a different meaning when it used the word "terminate" rather than "discharge." Indeed, even if there might be a distinction between the two words in some contexts, the legislature made its intent clear in this statute by adding the phrase "the employment of any employee" after "terminate." *See* § 24-34-402.5(1). By proscribing "terminat[ing] the employment of any employee," the legislature signaled that the statute applies only to the end of the employment relationship.

¶ 17    This distinguishes the Lawful Activities Statute from section 24-19-102(5)(a), C.R.S. 2020, on which Butler relies. That statute defines "postemployment compensation," for purposes of provisions limiting postemployment compensation for government-supported

---

[3] As Butler admits, the legislature has, at times, used "terminate" in a way that seems synonymous with "discharge." *See, e.g.,* § 17-1-115.5(1)(k), C.R.S. 2020; § 17-2-202.5(1)(d), C.R.S. 2020; § 31-30-1131(1) & (1.5), C.R.S. 2020. Other times, it has used neither word although its intended meaning seems to have been the same. *See, e.g.,* § 13-71-134(1), C.R.S. 2020 (prohibiting employers from "depriv[ing] an employed juror of employment or any incidents or benefits thereof" based on the employee's juror service).

employees, as compensation paid after an employee's "termination . . . from a particular employment position."  *Id.*  In that statute, the legislature made clear its intent to address termination from a particular position, whereas in the Lawful Activities Statute it made clear its intent to address termination from employment altogether.

¶ 18    Third, we look to the context in which the statutory words appear.  The title of the statute is "[u]nlawful prohibition of legal activities as a condition of employment," suggesting that the legislature's primary focus was on restrictions employers might impose as a condition of maintaining employment — not on actions that might result in an employee's demotion from one position to another while still remaining employed.  *See* § 24-34-402.5; *see also Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004) ("Although the title of a statute is not dispositive of legislative intent, it is a useful aid in construing a statute.").  The statute's exceptions for "restrictions" that relate to bona fide occupational requirements, employment activities and responsibilities, and conflicts of interest reinforce this understanding.  *See* § 24-34-402.5(1)(a)-(b).

¶ 19    Fourth, we are mindful that, in construing a statute, "[w]e do not add words to the statute or subtract words from it."  *Turbyne v.*

*People*, 151 P.3d 563, 567 (Colo. 2007). Had the legislature intended to include demotions or other adverse employment actions within the scope of the statute, it could have said so, as it has in other employment statutes. *See, e.g.*, § 24-34-402(1)(a) (making it unlawful to "refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment" against any employee because of that employee's protected status). Because it did not, "we cannot supply the missing language and must respect the legislature's choice of language." *Turbyne*, 151 P.3d at 568.

¶ 20    Finally, while the Lawful Activities Statute is a remedial statute that should be interpreted broadly to achieve its objective, *Watson v. Pub. Serv. Co.*, 207 P.3d 860, 864 (Colo. App. 2008), even a remedial statute cannot be read "more broadly than its language and the statutory scheme reasonably permit," *USA Tax Law Ctr., Inc. v. Office Warehouse Wholesale, LLC*, 160 P.3d 428, 434 (Colo. App. 2007) (citation omitted). Butler cites cases where other state courts broadly applied common law public policy claims to extend to demotion as well as discharge. *See Hill v. State*, 448 P.3d 457,

11

467-68 (Kan. 2019); *Trosper v. Bag 'N Save*, 734 N.W.2d 704, 711-12 (Neb. 2007). But when, as here, we are reviewing statutory claims, we are confined by the language in the statute. *See Turbyne*, 151 P.3d at 567-68.

¶ 21 Accordingly, we conclude that the Lawful Activities Statute does not apply to the demotion of an employee to another position for the same employer. And, because Butler alleges that he was demoted — and does not allege that he was discharged (or even constructively discharged) — from his employment with the County, the trial court didn't err in dismissing this claim.

### C. Freedom of Legislative and Judicial Access Act

¶ 22 The parties dispute whether the Access Act protects an employee who testifies as a witness in a court proceeding upon being called by one of the parties or counsel to the proceeding but without an order, subpoena, or other formal court-issued request. We conclude that it does.

¶ 23 The Access Act provides, in relevant part, that

> [i]t is unlawful for any person to adopt or enforce any rule, regulation, or policy forbidding or preventing any of its employees . . . from, or to take any action against its employees . . . *solely for, testifying before* a

12

committee of the general assembly or *a court of law* or speaking to a member of the general assembly *at the request of such* committee, *court,* or member regarding any action, policy, rule, regulation, practice, or procedure of any person or regarding any grievance relating thereto.

§ 8-2.5-101(1)(a) (emphases added).  This prohibition, however, does not apply to testimony that discloses confidential, proprietary, or otherwise privileged information.  § 8-2.5-101(1)(b).  The statute defines "persons" broadly to include counties as well as other governmental and business entities, officers and agents of such entities, and individuals.  § 8-2.5-101(4).  It also creates a private right of action for employees who are injured by a violation of its provisions.  § 8-2.5-101(2)(a).

¶ 24      "This statute clearly expresses public policy regarding employees' responsibilities as citizens to honor requests for testimony from courts and from committees and members of the General Assembly."  *Slaughter v. John Elway Dodge Sw./AutoNation,* 107 P.3d 1165, 1168 (Colo. App. 2005).  It also clearly expresses public policy regarding an employee's right to be free from adverse employment action solely for fulfilling those responsibilities.  *Id.*

¶ 25    An employee must satisfy four elements to bring a retaliation claim under the Access Act: (1) the employee testified before a legislative committee or a court of law or spoke to a member of the legislature at the committee's, court's, or member's request; (2) the testimony or conversation was about an action, policy, rule, regulation, practice, or procedure or a grievance relating thereto; (3) the testimony or conversation didn't disclose any confidential, proprietary, or otherwise privileged information; and (4) the employer took action against the employee solely because of that testimony or conversation.

¶ 26    The parties' dispute in this case centers on the first element — specifically, what it means to testify "at the request of . . . [a] court." We conclude that this language is ambiguous.

¶ 27    It's unclear exactly what the legislature intended when it used the term "request" with respect to a "court." The statute doesn't define either term. Section 2-4-401(2), C.R.S. 2020, defines "court" for purposes of state statutes to mean "a court of record." Other authorities suggest that "court" has frequently — but not always — been viewed as synonymous with "judge" or "judicial officer." *See, e.g.,* C.R.C.P. 107(a)(6) (defining "court" for purposes of the rule on

contempt sanctions as "any judge, magistrate, commissioner, referee, or a master while performing official duties"); Fed. R. Crim. P. 1(b)(2)-(3) (defining "court" for purposes of the Federal Rules of Criminal Procedure as a federal justice, judge, or magistrate); *Matter of Ridgeway*, 973 F.3d 421, 426 (5th Cir. 2020) ("[T]he term court is synonymous with the judge or judges who sit on a tribunal."); Black's Law Dictionary (11th ed. 2019) (defining "court" as "[a] tribunal constituted to administer justice," "[t]he judge or judges who sit on such a tribunal," or the place where justice is administered). *But see Gruner v. Moore*, 6 Colo. 526, 529 (1883) (concluding the term "court" in a particular statute wasn't synonymous with "judge"); *Nat'l Home Ins. Co. v. Commonwealth*, 444 S.E.2d 711, 714 (Va. 1994) (concluding the phrase "court of competent jurisdiction" in a statute was ambiguous).

¶ 28    Assuming, then, that the term "court" in the Access Act means a judicial officer, we turn to the term "request." The statute concerns a court's "request" for a witness's testimony — a verb that ordinarily means "the act or an instance of asking for something." Merriam-Webster Dictionary, https://perma.cc/X566-M75Y; *see*

15

*also Lutz v. Indus. Claim Appeals Office*, 24 P.3d 29, 31 (Colo. App. 2000) (applying a similar definition of "request").

¶ 29 However, judicial officers don't ordinarily ask witnesses to testify. The County suggests that "[a] court requests the presence of an individual through a court order, subpoena, or pursuant to CRE 614." But judges, magistrates, and other judicial officers rarely use these tools to solicit a witness's testimony — and for good reason, as they must take "great care to insure that [they] do[] not become . . . advocate[s]." *People v. Rodriguez*, 209 P.3d 1151, 1162 (Colo. App. 2008) (quoting *People v. Adler*, 629 P.2d 569, 573 (Colo. 1981)), *aff'd*, 238 P.3d 1283 (Colo. 2010).

¶ 30 Thus, in practice, judicial officers don't often enter orders requiring witnesses to testify unless a party or witness raises an objection (such as an assertion of a privilege or right against testifying or a challenge to a subpoena) that would preclude the testimony and the judicial officer overrules the objection. *See, e.g., Hartmann v. Nordin*, 147 P.3d 43, 52-53 (Colo. 2006); *People v. Ray*, 2018 COA 36, ¶¶ 3-8. Judicial officers also don't sign subpoenas, which are issued by court clerks or, more frequently, by attorneys. *See* C.R.C.P. 45(a)(2) (requiring a clerk to issue a blank subpoena

upon request and permitting an attorney who has appeared in a case to issue a subpoena "as an officer of the court"); *see also, e.g.*, Fed. R. Civ. P. 45 advisory committee's note to 1991 amendments (explaining that the comparable federal rule has evolved over time such that subpoenas initially were issued by court order, then by court clerks in blank, and ultimately by attorneys themselves to avoid the delay and expense caused by the need to secure forms from a clerk). And, while judicial officers may call or question witnesses under CRE 614, such actions (particularly calling witnesses) are relatively rare and "subject to challenge for partiality" due to concerns of "overintervention and courts becoming advocates themselves." *Medina v. People*, 114 P.3d 845, 861-62 (Colo. 2005) (Coats, J., concurring in the judgment only) (citing *Adler*, 629 P.2d at 573); *see also* 29 Victor J. Gold, *Federal Practice & Procedure: Federal Rules of Evidence* § 6234, Westlaw (2d ed. database updated Oct. 2020) (cautioning that a court's authority under the comparable federal rule "should be employed sparingly" as it "encroaches upon the powers of the adversaries and risks the appearance of judicial bias").

17

¶ 31    Instead, it is the parties and their counsel who solicit witnesses and witness testimony in court proceedings.  For their part, while judicial officers generally don't solicit witnesses, they do have "broad discretion to control the manner in which witnesses offer testimony."  *People v. Gutierrez*, 2018 CO 75, ¶ 11.  Thus, for instance, judges may issue rulings allowing or precluding a witness's testimony.  *See, e.g., Erskine v. Beim*, 197 P.3d 225, 226 (Colo. App. 2008) (reviewing order striking expert witnesses); *Williams v. Cont'l Airlines, Inc.*, 943 P.2d 10, 19-20 (Colo. App. 1996) (reviewing order striking witnesses due to insufficient disclosures); *see generally* CRE 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.").

¶ 32    These considerations render the legislature's use of the phrase "at the request of . . . [a] court" ambiguous.  Accordingly, we turn to the legislative history.  *See McCoy*, ¶ 38.

18

¶ 33    As originally introduced, the bill didn't include the "at the request of" phrase.  H.B. 97-1224, 61st Gen. Assemb., 1st Reg. Sess. (Colo. 1997) (original bill as introduced in the House).  Some legislators expressed concerns about potential abuse by "unscrupulous" employees, who could demand time off work every week or in a large group to go to the legislature or could talk with a legislator or testify before the legislature about "any old matter" for the sole purpose of insulating themselves from adverse employment action.  *See* Hearings on H.B. 97-1224 before the H. State Affairs Comm., 61st Gen. Assemb., 1st Reg. Sess. (Feb. 6, 1997); 2d Reading on H.B. 97-1224 before the H., 61st Gen. Assemb., 1st Reg. Sess. (Feb. 18, 1997).  Legislators agreed to add the "at the request of" phrase to curb such abuses, noting that with this change employees couldn't leave work to come to the legislature unless a legislator requested it.  *See* 2d Reading on H.B. 97-1224 before the S., 61st Gen. Assemb., 1st Reg. Sess. (Mar. 27, 1997); H. Concurrence to S. Amendments, H.B. 97-1224, 61st Gen. Assemb., 1st Reg. Sess. (Apr. 8, 1997); H. Adoption of Conf. Comm. Report, 61st Gen. Assemb., 1st Reg. Sess. (Apr. 23, 1997).

¶ 34     This history shows that the legislature included the "at the request of such committee, court, or member" phrase in the Access Act to ensure that employees could invoke the statute's protections if — and only if — they had a legitimate reason to go to the legislature or the court.  Although the legislative discussions focused on participation in legislative proceedings, it's clear that the legislature intended the same limited protections to be available to employees who participated in court proceedings.  Yet the terminology the legislature used — a single phrase the drafters inserted to apply to both legislative and judicial proceedings — is consistent with the processes employed by legislators and legislative committees but not necessarily with those employed by the courts.

¶ 35     We are mindful that, "when construing a statute, courts must not follow [a] statutory construction that leads to an absurd result" that would be "inconsistent with the purposes of the legislation." *Town of Erie v. Eason*, 18 P.3d 1271, 1276 (Colo. 2001); *see also Barnhart v. Am. Furniture Warehouse Co.*, 2013 COA 158, ¶ 14 ("[I]f the literal import of the text of an act is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results, the words of the statute will be construed to agree with the

intention of the legislature." (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:7, at 253-57 (7th ed. 2009))).

¶ 36     Here, affording statutory protections to court witnesses only when a judicial officer formally requested their testimony by entering a court order, issuing a subpoena, or calling or questioning them as witnesses under CRE 614 would lead to an absurd result not in accord with the legislative intent.  As we have explained, judicial officers generally don't enter orders requiring a witness's testimony unless they are overruling a specific objection; they don't issue subpoenas; and they only occasionally question and even more rarely call a witness under CRE 614.  And any interpretation that would afford employees protection only when a judicial officer happened to rule on a procedural objection to their testimony or to pose a question to them while they were on the stand would "exalt form over substance without advancing any public policy interest, and would lead to an absurd and illogical result."  *Abrahamson v. City of Montrose*, 77 P.3d 819, 823 (Colo. App. 2003) (quoting *Emps. Ins. v. RREEF USA Fund-II (Colo.), Inc.*, 805 P.2d 1186, 1188 (Colo. App. 1991)).

21

¶ 37    We therefore interpret the statutory phrase "at the request of . . . [a] court" to apply to court proceedings in a manner comparable to its application in legislative proceedings: to preclude protected status for employees who attempt to sit in on or testify in a court proceeding they have no connection with but to allow it where a party or attorney calls the employee to testify as a witness in a court proceeding and a judicial officer allows the testimony.  In addition to effectuating the legislative intent — which is our primary purpose in statutory interpretation, *McCoy*, ¶ 37 — this interpretation recognizes the different roles that parties, their counsel, and judicial officers serve in court proceedings; is consistent with evidentiary rules, which permit witnesses to testify in court proceedings only if they have personal knowledge about relevant matters, *see* CRE 402, 602; and broadly construes the Access Act as a remedial statute, *see Watson*, 207 P.3d at 864.

¶ 38    We also reject the County's argument that a witness must be subpoenaed, rather than appear voluntarily, to fall within the statute's protection.  In another context, our supreme court has concluded that "[w]here a subpoena is required, the legislature explicitly identifies that requirement." *People v. Yascavage*, 101

P.3d 1090, 1095 (Colo. 2004) (interpreting "legally summoned" in section 18-8-707(1)(b), C.R.S. 2020, as not requiring a subpoena). We conclude the same is true here, particularly because the term "request" in section 8-2.5-101(1)(a) doesn't suggest any action as formal or mandatory as a subpoena. Indeed, a separate subsection of the statute makes it unlawful to intimidate or take action against a legislative witness regardless of whether the witness testified "voluntarily or pursuant to a subpoena," § 8-2.5-101(1.5)(a), (b)(I), suggesting that the legislature knew how to create a subpoena requirement if it had wanted to.[4]  Also, as we have explained, subpoenas are usually issued by attorneys, not by judicial officers or court clerks.[5]  And, finally, we disagree that *Slaughter* suggests

[4] We do not read the reference to subpoenas in one subsection of the statute but not the other as suggesting that subpoenas may be required under section 8-2.5-101(1)(a), C.R.S. 2020, although they are not required under section 8-2.5-101(1.5)(a).  The reference to subpoenas in the latter subsection makes sense because one of the enumerated unlawful acts in that subsection is intimidating legislative witnesses to avoid "legal process summoning" their testimony.  § 8-2.5-101(1.5)(a)(I)(D).  So, without the clarification provided by section 8-2.5-101(1.5)(b)(I), that entire subsection could've been interpreted as requiring that the witness be under a subpoena or other legal process.

[5] And, to the extent that attorneys sign subpoenas as "officers of the court," C.R.C.P. 45(a)(2), it seems attorneys act equally as officers of

23

an employee's testimony must be involuntary to be protected. The division in that case held that an employee's acts of filing a lawsuit and seeking a restraining order against her employer weren't protected — not because those acts were voluntary but because the statutory language addresses only requests for testimony and not filing of legal proceedings. 107 P.3d at 1168-69.

¶ 39    Applying the standard we have adopted today, we conclude that Butler created a triable issue as to the first element of his Access Act claim by presenting evidence that he was called by a party or a party's attorney and was permitted by a judicial officer to testify as a witness in a court proceeding. We therefore conclude that the trial court erred in granting summary judgment to the County on this claim.

¶ 40    We decline the County's invitation to affirm the entry of summary judgment on the alternative basis that it didn't demote

the court when they call or question witnesses. *See generally People v. Selby*, 156 Colo. 17, 19, 396 P.2d 598, 599 (1964) ("Lawyers should ever remember that it is their duty to act with dignity, restraint and fairness in the hallowed process of seeking justice through our judicial system. Those who forget, or deliberately violate, this injunction violate their oath and obligation as lawyers and officers of the Court.").

Butler solely due to the fact that he testified in court but also because he exhibited poor managerial judgment and allowed his family dispute to disrupt the workplace. *See Hoffler v. Colo. Dep't of Corr.*, 27 P.3d 371, 376 n.5 (Colo. 2001) (a disciplinary action isn't taken "solely" because of an employee's testimony if it's based on the fact that the employee lied during that testimony). We also decline Butler's invitation to determine that he established each of the four elements of his Access Act claim as a matter of law. Those are factual issues that we cannot resolve on the summary judgment record before us.

¶ 41    For these reasons, we reverse the trial court's entry of summary judgment on the Access Act claim and remand for further proceedings on that claim.

### III.   Conclusion

¶ 42    We reverse the trial court's entry of summary judgment on Butler's Access Act claim and remand the case for further proceedings on that claim. We affirm the judgment in all other respects.

JUDGE TERRY and JUDGE DUNN concur.